**[Cite as *State v. Jennings*, 2014-Ohio-2307.]**

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                                :

    Plaintiff-Appellee                  :                    C.A. CASE NO.    2013 CA 60

v.                                           :                    T.C. NO.    12CR845

LEMARR JENNINGS                              :                    (Criminal appeal from
                                                                  Common Pleas Court)

    Defendant-Appellant                 :

                                             :

. . . . . . . . . .

# **O P I N I O N**

Rendered on the _____30th_____ day of _____May_____, 2014.

. . . . . . . . . .

LISA M. FANNIN, Atty. Reg. No. 0082337, Assistant Prosecuting Attorney, 50 E. Columbia Street, 4th Floor, Springfield, Ohio 45501
    Attorney for Plaintiff-Appellee

ADAM JAMES STOUT, Atty. Reg. No. 0080334, 2600 Far Hills Avenue, Suite 315, Dayton, Ohio 45419
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, P.J.

    **{¶ 1}**   Lemarr Jennings pled guilty in the Clark County Court of Common

Pleas to possession of cocaine, possession of heroin, and having a weapon while under disability. In exchange for the plea, several other charges and specifications were dismissed. The court sentenced Jennings to serve ten years for possession of cocaine, seven years for possession of heroin, and three years for having a weapon under disability, to be served consecutively for a total sentence of 20 years in prison. The court also imposed fines, suspended Jenning's driver's license, ordered the forfeiture of certain property, and required him to pay court costs.

{¶ 2} Jennings appeals from his conviction, claiming that his pleas were not entered knowingly, intelligently, and voluntarily, and that his sentence is contrary to law. For the following reasons, the trial court's judgment will affirmed.

## I. Voluntariness of Guilty Plea

{¶ 3} Jennings's first assignment of error states: "Mr. Jennings's Plea was not Made Knowingly and Intelligently When He was Misinformed by the Trial Court of the Penalties for Violating Post Release Control."

{¶ 4} An appellate court must determine whether the record affirmatively demonstrates that a defendant's plea was made knowingly, intelligently, and voluntarily. *State v. Russell*, 2d Dist. Montgomery No. 25132, 2012-Ohio-6051, ¶ 7. "If a defendant's guilty plea is not knowing and voluntary, it has been obtained in violation of due process and is void." *State v. Brown*, 2d Dist. Montgomery Nos. 24520 & 24705, 2012-Ohio-199, ¶ 13, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C). *Brown* at ¶ 13.

{¶ 5} Crim.R. 11(C)(2) requires the court to (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty [or no contest] and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses, and to require the State to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 6} The Supreme Court of Ohio has urged trial courts to literally comply with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need only substantially comply with those requirements. *E.g.*, *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.* In contrast, the trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Clark* at ¶ 31.

{¶ 7} Furthermore, when non-constitutional rights are at issue, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made generally must show a prejudicial effect. *State v. Veney*, 120 Ohio St.3d

176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17. Prejudice in this context means that the plea would otherwise not have been entered. *Id.* at ¶ 15. Where the trial court completely fails to comply with Crim.R. 11(C)(2)(a) or (b), however, "an analysis of prejudice" is not implicated. *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22.

{¶ 8} On January 18, 2013, Jennings pled guilty to possession of cocaine, possession of heroin, and having a weapon while under disability, in exchange for which the State agreed to dismiss two firearm specifications and seven additional charges. During the plea hearing, the trial court informed Jennings of the nature of his offenses and of his constitutional rights. The court inquired as to whether Jennings was entering his pleas voluntarily, whether he understood his pleas, whether he was under the influence of any drugs, alcohol, or medication, and whether any other promises or threats had been made to him. The court explained the maximum prison sentences and fines for each offense and indicated, as appropriate, that some offenses required a driver's license suspension and mandatory minimum prison terms and fines. Jennings was told that the possession of cocaine offenses had a mandatory minimum sentence of three years and a mandatory minimum fine of $10,000, and that the possession of heroin offense had a mandatory minimum sentence of two years and mandatory minimum fine of $7,500.

{¶ 9} With regard to post-release control, the trial court told Jennings that he would be placed on a mandatory five years of post-release control upon his release from prison and that he would be subject to sanctions if he violated post-release control. The court explained:

> The duration of it [post-release control] could be increased up to a

maximum term of eight years, more restrictive rules could be placed upon you. You could return to prison for each violation for up to a total of one half of your original sentence.

If you commit a felony offense while on post-release control, you could return to prison for the amount of time you have remaining on post-release control or one year, whichever is greater; and that would be consecutive to the time you would get for the new felony offense.

Jennings indicated that he understood these possible sanctions.

**{¶ 10}** Jennings argues that his plea was involuntary, because the trial court's post-release control notice at his plea hearing was incomplete. R.C. 2943.032 provides:

Prior to accepting a guilty plea or a plea of no contest * * * [for] a felony, the court shall inform the defendant personally that, if the defendant pleads guilty or no contest to the felony so charged or any other felony, if the court imposes a prison term upon the defendant for the felony, and if the offender violates the conditions of a post-release control sanction imposed by the parole board upon the completion of the stated prison term, the parole board may impose upon the offender a residential sanction that includes a new prison term of up to nine months.

Here, the court informed Jennings that he could be "return[ed] to prison for each violation for up to a total of one half of your original sentence," but the court did not discuss the nine-month-per-violation limitation.

**{¶ 11}** In *State v. Jones*, 2d Dist. Montgomery No. 24772, 2013-Ohio-119, we

discussed whether the trial court had complied with Crim.R. 11, when the trial court notified the defendant that the prison term for violation of post-release control could be "up to one half of the Court's stated prison term", but failed to notify the defendant about the nine-month-per-violation limitation for a violation of post-release control. We held that the trial court's notice substantially complied with Crim.R. 11. *Id*. at ¶ 8. We further concluded that the trial court's failure to mention the nine-month limitation did not render the defendant's plea other than knowing, intelligent, and voluntary. We reasoned:

> Jones does not assert, let alone demonstrate, that he was prejudiced – that he would not have pleaded guilty had the trial court told him that the maximum possible prison term for a single violation of a post-release control condition is 9 months. We fail to see how this defendant, facing a potential of many years of re-incarceration for post release control violations, would have failed to enter his pleas if he knew those many years could only be imposed in nine month increments.

*Id*. at ¶ 11.

{¶ 12} In this case, the trial court's notification regarding post-release control substantially complied with Crim.R. 11, and Jennings does not argue, let alone demonstrate, that he was prejudiced by the trial court's failure to inform him of the nine-month per violation limitation. Jennings has not demonstrated that he would not have entered his guilty pleas if he knew that he faced up to nine-months in prison for each post-release control violation.

{¶ 13} Jennings's first assignment of error is overruled.

## II. Consecutive Sentences

{¶ 14}   Jennings's second assignment of error states: "Mr. Jennings's Sentence is Contrary to Law Because the Trial Court Erred in Sentencing Mr. Jennings to Consecutive Sentences."

{¶ 15}   In his second assignment of error, Jennings claims that consecutive sentences were contrary to law and an abuse of discretion, because his role in the offenses "was not serious enough to warrant the imposition of consecutive sentences." Jennings argues that his involvement with the drugs and guns was "minimal compared to the other bad actors in this case and certainly not fitting the imposition of a 20 year prison sentence."

{¶ 16}   R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it finds that (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) any of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 17} In most cases, "[t]he trial court is not required to give reasons explaining these findings, nor is the court required to recite any 'magic' or 'talismanic' words when imposing consecutive sentences. * * * Nevertheless, the record must reflect that the court made the findings required by the statute." *State v. Temple*, 2d Dist. Clark No. 2012-CA-65, 2013-Ohio-3843, ¶ 21, quoting *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 86.

{¶ 18} The presentence investigation report reflects that Jennings was arrested after the police executed a search warrant at a suspected drug house; Jennings was observed leaving the house just prior the execution of the warrant and there were no other occupants. The search warrant affidavit indicated that Jennings was a "known drug dealer." The police seized a Beretta 9mm pistol (which was found to be stolen), an AR-15 semi-automatic assault rifle (also stolen), a 12-gauge shotgun, three bags of crack cocaine, three bags of heroin, several boxes of baggies, and currency totaling more than $7,000. Jennings pled guilty to three charges arising out of the search, but in his statements to the presentence investigator, Jennings stated that "he did not have anything to do with the drugs, guns or money found in the home." A recorded jail conversation between Jennings and a woman on the date of Jennings's arrest suggested that Jennings was aware of the contraband in the house and that more might be hidden.

{¶ 19} Jennings has a significant criminal history, including five prior drug-related

convictions and two prior weapons offenses. Jennings admitted to the presentence investigator that he had a misdemeanor theft offense as a juvenile. As an adult, Jennings had twelve criminal cases (not including probation violations and an ILC violation), spanning from 1998 to the present case. On three separate occasions, Jennings was sentenced to two years in prison; in 2003, Jennings received two years in prison for possession of cocaine (a second-degree felony), in 2007 he was sentenced to two years for having weapons while under disability, and in 2009 he received two years for failing to comply with an order or signal of a police officer. Jennings had numerous rules infractions while incarcerated. Jennings was on community control when he committed the instant offenses.

{¶ 20} Jennings states in his appellate brief that his culpability was much less than other individuals involved in the house, who were named in the search warrant affidavit. The presentence investigation report states that Jennings has no codefendants, and there is no indication in the record that any other individual was charged and convicted related to the contraband at the house at issue.

{¶ 21} When imposing Jennings's sentence, the trial court made the findings required by R.C. 2929.14(C)(4), including specifically the finding set forth in subdivision (c) that his history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime. We do not "clearly and convincingly" find either that the record does not support the trial court's findings under R.C. 2929.14(C)(4), or that the sentence is otherwise contrary to law. R.C. 2953.08(G)(2). *See State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069 (2d Dist.). Further, considering the abuse of discretion

standard, which Jennings suggests in his appellate brief, we cannot conclude that consecutive sentences are unreasonable. *See id.* at ¶ 48-50 (Froelich, J., concurring in judgment).

**{¶ 22}** Jennings's second assignment of error is overruled.

III.

**{¶ 23}** Jennings's third assignment of error states: "Mr. Jennings's Sentence is Contrary to Law Because the Trial Court Erred in Sentencing Mr. Jennings to Consecutive Sentences After Reviewing a Pre Sentencing Investigation that Takes Into Account Where the Defendant's Residence is Located in its Decision."

**{¶ 24}** In his third assignment of error, Jennings claims that the trial court erred in considering the results of the Ohio Risk Assessment System regarding his likelihood of recidivism, because the assessment improperly considers the neighborhood in which he resides in its calculus of his "criminogenic risk." Jennings states that "[i]ncluding factors such as living in a high crime area unduly prejudices and discriminates against a defendant from a disadvantaged economic background."

**{¶ 25}** In 2006, the Ohio Department of Rehabilitation and Correction (ODRC) contracted with the University of Cincinnati, Center for Criminal Justice Research, to develop risk and needs assessment tools that were predictive of recidivism at multiple points in the criminal justice system. Edward Latessa, et. al, Creation and Validation of the Ohio Risk Assessment System, Final Report (July 2009), http://www.ocjs.ohio.gov/ORAS_FinalReport.pdf (accessed May 20, 2014). R.C. 5120.114, which was enacted as part of H.B. 86 in 2011, requires ODRC to select a single

validated risk assessment tool for adult offenders, to be used by a variety of entities, including courts (when the court orders an assessment of the offender for sentencing or another purpose), probation departments, the adult parole authority, and correctional facilities. ODRC selected the Ohio Risk Assessment System (ORAS), created by the University of Cincinnati. Ohio Adm.Code 5120-13-01.

{¶ 26} The ORAS assesses an offender in seven categories: (1) criminal history, (2) education, employment, and financial situation, (3) family and social support, (4) neighborhood problems, (5) substance use, (6) peer associations, and (7) criminal attitudes and behavioral patterns; subsets of neighborhood problems are "high crime area" and "drugs readily available in neighborhood."

{¶ 27} Crime statistics concerning neighborhoods (however that is defined), employment history, school attendance, race, gender, age, prior involvement in law enforcement, and other factors may result in figures regarding the relationship of these factors with recidivism. However, they can often be misleading and biased and based on unreliable (in the sense of not being relevant or accurate predictors of future behavior of a *specific* individual) facts, and can conflate correlation with causation.

{¶ 28} ORAS is a work in progress, and it is not a litmus test for sentencing. Rather, at most, it may be one factor in informing a trial court's discretion in imposing specific methods to address an offender's "rehabilitative needs." Ohio statutory authority and case law place enormous discretion with the trial judge to sentence an offender, and the more sources of accurate information that guide that discretion, the better for the defendant and the community.

{¶ 29} In the case before us, the presentence investigation report included an ORAS risk assessment of Jennings. Jennings scored "high" in the criminal history, educational, and neighborhood categories. He scored "moderate" on the other four categories. The overall assessment was a "high" risk.

{¶ 30} Although included in the PSI, the trial court did not mention Jennings's ORAS assessment at the sentencing hearing, and the record does not contain any analysis of what role, if any, the ORAS score played in Jennings's sentence. Rather, the trial court extensively reviewed Jennings's criminal history and determined that his "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the defendant." When defense counsel objected to the trial court's imposition of consecutive sentences, the trial court "stood by" its decision, emphasizing "the nature of the offenses and the defendant's prior criminal record." We see no indication in the record that Jennings's overall ORAS score – and the neighborhood score, specifically – played even a minimal role, if any, in the court's decision.

{¶ 31} Jennings's third assignment of error is overruled.

### IV. Conclusion

{¶ 32} The trial court's judgment will be affirmed.

. . . . . . . . . .

WELBAUM, J., concurs.

HALL, J., concurring:

{¶ 33} Because the record does not indicate that the trial court considered the ORAS evaluation for its sentencing decision, I would defer commentary thereon until the issue is before us supported by a record that confirms or refutes its effectiveness.

**[Cite as *State v. Jennings*, 2014-Ohio-2307.]**

. . . . . . . . . .

Copies mailed to:

Lisa M. Fannin
Adam James Stout
Hon. Douglas M. Rastatter