[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re J.T.*, Slip Opinion No. 2015-Ohio-3654.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-3654

IN RE J.T.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re J.T.,* Slip Opinion No. 2015-Ohio-3654.]**

*Criminal law—An inoperable pistol that is not used as a bludgeon or otherwise used, possessed, or carried as a weapon is not a "deadly weapon" for purposes of R.C. 2923.12, which prohibits carrying a concealed weapon— Conviction vacated.*

(No. 2014-0449—Submitted February 24, 2015—Decided September 10, 2015.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-130434.

_____

**O'NEILL, J.**

**{¶ 1}** The juvenile in this matter was carrying a broken pistol in his waistband that was no longer capable of firing a round. That fact notwithstanding, he was charged with carrying a concealed deadly weapon and was found delinquent. Today, we apply a common-sense reality check to that fact pattern. When a person has an inoperable handgun tucked into his or her

waistband and does not use it as a bludgeoning implement, it is not a deadly weapon. While it had been designed as a deadly weapon in that it was meant to fire a potentially lethal projectile, its essence as a deadly weapon ended when it became inoperable. In effect, since it was inoperable, it was no different from a stone or a brick. If it had been used as a bludgeon or otherwise used, possessed, or carried as a weapon, it could be considered a deadly weapon. As nothing more than a heavy object tucked into a waistband or a pocket, however, it was not. Just as it would be improper to convict someone of carrying a concealed weapon simply because he had a stone in his pocket, it is also improper to convict someone of that crime simply for having an inoperable pistol tucked into his waistband.

## Facts and Procedural History

{¶ 2} On March 17, 2013, Cincinnati Police Officer Frank Boggio was called to a location where a large group of juveniles had gathered. Boggio approached the group and stopped two males who were wearing dark hooded sweatshirts. One of them was appellant, J.T. Officer Boggio noticed a rather large bulge around J.T.'s waistband. Officer Boggio patted down J.T. and felt a gun tucked into his waistband. J.T. admitted that he had a gun, and the officer removed a loaded Hi-Point 9mm handgun from J.T.'s waistband.

{¶ 3} That same day, Officer Boggio filed a complaint alleging that J.T., a minor, was delinquent for carrying a concealed deadly weapon on his person, a fourth-degree felony. On April 8, 2013, just prior to trial, the charge was amended to a first-degree misdemeanor because it had been determined that the gun was inoperable. J.T. was found to be delinquent. The magistrate stated that "[e]vidence proved beyond a reasonable doubt that the defendant possessed the firearm in his waistband" and that "[t]he weapon was inoperable but was still capable of being used as a deadly weapon." J.T. was found to have violated R.C. 2923.12, which prohibits carrying a concealed weapon.

**{¶ 4}** On April 22, 2013, J.T. timely filed written objections to the magistrate's decision. On May 22, 2013, the trial court heard oral arguments on J.T.'s objections. The juvenile court subsequently overruled the objections and adopted the magistrate's decision. J.T. filed an appeal in the First District Court of Appeals on July 15, 2013. In his appeal, J.T. argued that an inoperable pistol carried in one's waistband and not brandished or used in any way is not a "deadly weapon" within the statutory meaning. On February 7, 2014, the First District Court of Appeals affirmed the trial court's decision. The court stated that "[i]t is beyond cavil that the pistol had been designed as a weapon. And the arresting police officer testified that the pistol was a heavy, blunt object—evidence that the pistol was capable of inflicting deadly harm." We accepted J.T.'s discretionary appeal. 139 Ohio St.3d 1416, 2014-Ohio-2487, 10 N.E.3d 737.

### Analysis

**{¶ 5}** The key question in this appeal is whether a person can be convicted of carrying a concealed weapon when the handgun being carried is inoperable and was not used as a bludgeon or otherwise used, possessed, or carried as a weapon. We must conclude that the answer is no. To hold to the contrary would necessarily lead to the conclusion that the operability of a gun is completely irrelevant. A gun could always be used as a bludgeon, so even an antique war relic would have to be considered a deadly weapon. Surely this was not the outcome intended by the legislature.

**{¶ 6}** R.C. 2923.12(A) prohibits the carrying of a concealed weapon, including a "deadly weapon" or a handgun. R.C. 2923.11(A) provides, " 'Deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." The First District Court of Appeals seemed to hang its hat on the fact that the gun J.T. had in his waistband had been designed as a weapon. It then found that the gun, while inoperable, was capable of deadly harm through use as a

bludgeon, as it "was a heavy, blunt object." This reasoning reflects skewed logic. While the gun in question was no doubt designed as a weapon, the design was for the gun to shoot a projectile from the barrel at a high rate of speed. It was not designed to be used as a bludgeon, like a club or nightstick. The fact that the gun was inoperable means that it had lost the sole function for which it had been designed. It was no longer a deadly weapon unless there was some evidence presented that it was used as a bludgeon or otherwise used, possessed, or carried as a weapon. There was not. Hence, it was no more of a deadly weapon than is a laptop computer or a briefcase, yet attorneys are not routinely arrested for carrying concealed weapons as they enter our courthouses.

{¶ 7} This court has previously held that a pistol must be operable or readily rendered operable at the time of the offense in order to be a "firearm" that would support a firearm specification under former R.C. 2929.71, Am.Sub.H.B. No. 261, 142 Ohio Laws, Part II, 3109. *State v. Murphy*, 49 Ohio St.3d 206, 208, 551 N.E.2d 932 (1990), citing *State v. Gaines*, 46 Ohio St.3d 65, 545 N.E.2d 68 (1989), syllabus. While the present case does not involve a firearm specification, there is no valid basis to distinguish between guns for purposes of a firearm specification and for the statute prohibiting carrying a concealed weapon. To allow an inoperable handgun to be considered a per se deadly weapon would be an unintended expansion of the statute. The General Assembly has shown that it is capable of crafting a statute that penalizes someone for carrying a gun whether it is operable or inoperable. R.C. 2923.122(C), the statute prohibiting weapons within a school zone, states, "No person shall knowingly possess an object in a school safety zone if * * * [t]he object is indistinguishable from a firearm, whether or not the object is capable of being fired."

{¶ 8} Clearly, the legislature could have used similar language in R.C. 2923.11(A) if it had intended the crime of carrying a concealed weapon to include

possession of an inoperable handgun.  The fact that it chose not to include such language should not be ignored.

**Conclusion**

{¶ 9} Based upon the foregoing analysis, an inoperable pistol that is not used as a bludgeon is not a "deadly weapon" for purposes of R.C. 2923.12, which prohibits carrying a concealed weapon.  Accordingly, there was insufficient evidence to support appellant's finding of delinquency for carrying a concealed weapon.  The judgment of the court of appeals is reversed, and the finding of delinquency is vacated.

Judgment reversed.

O'CONNOR, C.J., and LANZINGER and FRENCH, JJ., concur.

O'DONNELL and KENNEDY, JJ., concur in judgment only.

PFEIFER, J., dissents and would dismiss the appeal as having been improvidently accepted.

_____

Raymond T. Faller, Hamilton County Public Defender, and Gordon Magella, Assistant Public Defender, for appellant.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Rachel Lipman Curran, Assistant Prosecuting Attorney, for appellee.

_____