[Cite as *State v. Welch*, 2017-Ohio-314.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | |
|---|---|
| STATE OF OHIO | : |
| | : Appellate Case No. 2016-CA-6 |
| Plaintiff-Appellee | : |
| | : Trial Court Case No. 15-CR-411 |
| v. | : |
| | : (Criminal Appeal from |
| JOHN WELCH | :  Common Pleas Court) |
| | : |
| Defendant-Appellant | : |
| | : |

. . . . . . . . . .

O P I N I O N

Rendered on the 27th day of January, 2017.

. . . . . . . . . .

MEGAN M. FARLEY, Atty. Reg. No. 0088515, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
       Attorney for Plaintiff-Appellee

JON PAUL RION, Atty. Reg. No. 0067020, and NICOLE RUTTER-HIRTH, Atty. Reg. No. 0081004, Rion, Rion & Rion, L.P.A., Inc., 130 West Second Street, Suite 2150, Post Office Box 1262, Dayton, Ohio 45402
       Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} John Welch appeals from his conviction and sentence on one count of fifth-degree-felony domestic violence and from the trial court's imposition of a separate

sentence for violating post-release control.

{¶ 2} Welch advances two assignments of error. First, he contends the trial court erred in failing to give him proper credit on his sentence for violating post-release control. Second, he claims his guilty plea to domestic violence is invalid because the trial court failed to tell him during a plea hearing that any prison sentence for the post-release control violation was required to be imposed consecutively.

{¶ 3} We begin our analysis with the second assignment of error. The record reflects that Welch, who was on post-release control, pled guilty to domestic violence in exchange for dismissal of a felonious-assault charge. The written plea form included the following language: "I understand that if I am now on felony probation, parole, or under post-release control from prison, this plea may result in revocation proceedings *and any new sentence will be imposed consecutively*." (Emphasis added) (Doc. # 37). At the plea hearing, the trial court asked Welch about the plea form, confirming that he had a chance to go over it with his attorney and that he understood "everything in it." (Plea Tr. at 4). The trial court also told Welch that "a guilty plea in this case could result in some additional incarceration for violating your post-release control[.]" (*Id*. at 5). With regard to the new domestic violence charge, the trial court explained that Welch was subject to a mandatory prison sentence on it. It then advised him about post-release control for that new offense. Among other things, it told him: "If you commit a felony offense while on post-release control, you could return to prison for the amount of time you have remaining on post-release control or one year, whichever is greater, and that will be consecutive to the time you would get for the new felony offense." (*Id*. at 6-7).

{¶ 4} After accepting Welch's plea, the trial court found him guilty. It later

sentenced him to 12 months in prison for the domestic violence conviction. It imposed an additional 32 months (the time remaining on post-release control) for violating the terms of his post-release control by engaging in domestic violence. It ordered the two terms to be served consecutively.

{¶ 5} On appeal, Welch argues that his guilty plea was not entered knowingly, intelligently, and voluntarily because the trial court failed to inform him, at the plea hearing, that any prison sentence it imposed for violating post-release control was required to be consecutive to his domestic violence sentence. In that regard, R.C. 2929.141(A)(1) provides that a prison term imposed for a post-release control violation "shall be served consecutively to any prison term imposed for the new felony."

{¶ 6} In *State v. Branham*, 2d Dist. Clark No. 2013 CA 49, 2014-Ohio-5067, this court addressed a similar issue. The defendant in *Branham* had been on post-release control when he engaged in gross sexual imposition (GSI). He pled guilty to the GSI charge. The plea form advised him that post-release control could be revoked and that any sentence for having violated post-release control "could be imposed consecutively" to the GSI sentence. *Branham* at ¶ 11. The trial court subsequently imposed consecutive sentences for the gross sexual imposition conviction and for the post-release control violation.

{¶ 7} On review, this court reasoned:

* * * [T]he trial court failed to inform Branham during the plea colloquy that, pursuant to the explicit language in R.C. 2929.141(A)(1), if it revoked his PRC, imposition of consecutive sentences for the violation was, in fact, mandatory upon imposition of a prison term for GSI.

Significantly, although the plea form signed by Branham included a provision which informed him of the effect that his PRC violation could have on sentencing, it did not contain any language putting him on notice that consecutive sentences were mandatory upon a prison sentence on the GSI. Rather, the general provision in the plea form merely states that the trial court "could" impose consecutive sentences in the event of a violation of felony probation, parole, community control sanction, or post-release control from prison. The use of the word "could" in this context is misleading.

The trial court not only should have told Branham that it was not bound by the State's recommendation, but also if a new prison term was imposed and the court elected to revoke his PRC, the time must be served consecutively. The trial court did not have the discretion to use the word "could" as the language in the plea form suggests.

Branham's sole assignment of error is sustained.

*Id*. at ¶ 12-15.

{¶ 8} In *State v. Landgraf*, 2d Dist. Clark No. 2014 CA 12, 2014-Ohio-5448, this court applied and followed *Branham*. The defendant in *Landgraf* pled guilty to felony theft of a motor vehicle. At that time, he was on post-release control for an earlier conviction. The plea form advised him that post-release control could be revoked and that any new sentence for having violated post-release control "could be imposed consecutively." Post-release control was not mentioned at the plea hearing. The trial court confirmed, however,

that the defendant had reviewed the plea form and that he understood it. The trial court later imposed consecutive sentences for the felony theft conviction and for the post-release control violation. On appeal, this court's lead opinion relied on *Branham* and reasoned:

> Landgraf raises these same issues in the context of the voluntariness of his plea, and we find *Branham* to be relevant to our resolution of that issue. In this case, the trial court did not inquire at the plea hearing whether Landgraf was on post-release control at the time of his offense, and the trial court did not address any of the consequences that Landgraf faced under R.C. 2929.141 if Landgraf were to plead guilty to a new felony.

> In our view, Crim.R. 11 required the trial court to inform Landgraf that, if he pled guilty to theft of a motor vehicle (a new felony), the court could terminate his previously-imposed post-release control and, if a prison term were imposed for the theft of a motor vehicle charge, the trial court could also impose a prison term for the post-release control violation, which would be served consecutively to the prison term imposed on the new felony (theft of a motor vehicle). In addition, the trial court should have notified Landgraf of the maximum prison term he faced for violating the post-release control imposed by the Montgomery County court.

> The plea form was insufficient to notify Landgraf of the consequences of pleading guilty to a felony committed while under post-release control. The plea form stated that "this plea may result in revocation proceedings and any new sentence could be imposed consecutively. I know

any prison term stated will be served without good time credit." (Emphasis added.) As we stated in *Branham*, this language is misleading in that it suggests that the trial court had the discretion whether to impose a consecutive sentence for the post-release control violation.

*Id.* at ¶ 22-24.

{¶ 9} Two members of the *Landgraf* panel concurred separately, solely on the basis of stare decisis, while expressing disagreement with *Branham's* analysis and outcome. *Id.* at ¶ 28-29 (Hall, J., concurring) and ¶ 30 (Welbaum, J., concurring).

{¶ 10} Having reviewed *Branham* and *Landgraf*, as well as the requirements of Crim.R. 11, we find Welch's case distinguishable from those cases and conclude that his guilty plea was valid. Welch's argument references Crim.R. 11(C)(2)(a), which requires a defendant to be told the maximum penalty he faces. Welch contends he was not told the maximum penalty he faced because the trial court did not inform him, during his plea hearing, about the mandatory consecutive nature of any prison sentence it might impose for violating post-release control.[1] This court addressed the requirements of Crim.R. 11(C)(2) in *Landgraf* as follows:

Crim.R. 11(C)(2) requires the court to address the defendant personally and (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for

---

[1] *Landgraf's* lead opinion also stated that the trial court should have told the defendant the maximum amount of prison time he faced for violating post-release control. *Landgraf* at ¶ 23. Welch does not raise that particular argument here. Instead, he argues only that the trial court erred in failing to tell him he faced a mandatory consecutive prison term for violating post-release control. (Appellant's brief at 4-7).

probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses, and to require the State to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

The Supreme Court of Ohio has urged trial courts to literally comply with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need only substantially comply with those requirements. *E.g.*, *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id*. In contrast, the trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Clark* at ¶ 31.

Furthermore, when non-constitutional rights are at issue, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made generally must show a

prejudicial effect. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17. Prejudice in this context means that the plea would otherwise not have been entered. *Id*. at ¶ 15.

*Landgraf* at ¶ 12-14.

**{¶ 11}** Here Welch's invocation of Crim.R. 11(C)(2)(a) involves a non-constitutional right. Therefore, even accepting (on the basis of *Branham*, *Landgraf*, and the principle of stare decisis) that Crim.R. 11(C)(2)(a) obligated the trial court to inform Welch of the mandatory consecutive nature of any prison sentence it might impose for violating post-release control, we find at least substantial compliance here. Under the totality of the circumstances, Welch undoubtedly understood that he faced a mandatory consecutive sentence if a prison term were imposed for violating post-release control. We reach this conclusion for three reasons.

**{¶ 12}** First, unlike *Branham* and *Landgraf*, the plea form in this case explicitly informed Welch that his plea "may result in revocation proceedings" and that "any new sentence will be imposed consecutively." The primary reason for finding the pleas invalid in *Branham* and *Landgraf* was the fact that the plea forms in those cases said "any new sentence could be imposed consecutively." The fact that the plea form in the present case correctly advised Welch meaningfully distinguishes *Branham* and *Landgraf*.

**{¶ 13}** Second, the trial court orally confirmed at the plea hearing that Welch had reviewed the plea form with his attorney and that he understood everything in it. We recognize that the trial court did the same thing in *Landgraf*. *See Landgraf* at ¶ 6. In that case, however, the plea form only mentioned the possibility of a consecutive sentence. Here the plea form made clear that any prison sentence for violating post-release control

would be consecutive, and the trial court made sure Welch reviewed and understood the form. This fact supports a conclusion that he "subjectively understood" the mandatory consecutive nature of the penalty he faced. *See State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12, 16, 19 (finding substantial compliance with Crim.R. 11(C)(2)(b) regarding the effect of a plea where the defendant signed a plea form admitting his guilt and indicated his understanding of the contents of the document and the rights he was waiving, notwithstanding the trial court's failure to inform the defendant of the effect of his plea at the plea hearing); *see also State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 16.

{¶ 14} Third, the trial court did orally advise Welch at the plea hearing: "If you commit a felony offense while on post-release control, you could return to prison for the amount of time you have remaining on post-release control or one year, whichever is greater, *and that will be consecutive to the time you would get for the new felony offense.*" (Emphasis added) (Plea Tr. at 6-7). The trial court admittedly made this statement in the context of explaining the consequences of prospectively violating post-release control for his new domestic violence offense. The trial court conveyed exactly the same *information*, however, that Welch contends was missing from his plea hearing. Because Welch obviously *did* commit a new felony offense (domestic violence) while on post-release control for an earlier offense, the trial court's statement of law about any prison sentence for a post-release control violation being consecutive further supports our conclusion that he subjectively understood the nature of the penalties he faced.

{¶ 15} For each of the foregoing reasons, we conclude that the trial court at least substantially complied with Crim.R. 11(C)(2)(a) insofar as the rule may have obligated it

to inform Welch about the mandatory consecutive nature of any prison sentence imposed for violating post-release control. We also find no merit in Welch's argument that he suffered prejudice. Although he claims he would not have entered his guilty plea if he had known about the mandatory consecutive sentence for violating post-release control, the record does not support this claim. The record reveals that Welch *did* know any such sentence would be consecutive. Indeed, he acknowledged that fact, shortly before the plea hearing, in his written plea. As set forth above, the trial court also provided him with that information, during the hearing, while discussing the consequences of a post-release control violation for his new offense. Welch's second assignment of error is overruled.

{¶ 16} We turn now to the first assignment of error, which challenges the trial court's failure to "credit" Welch's sentence properly. This assignment of error concerns an administrative sanction the Adult Parole Authority (APA) imposed on Welch prior to the trial court's sentencing below. In his appellate brief, Welch asserts that he was subjected to an APA post-release control hearing based on his new domestic violence offense. He further asserts that the APA imposed a sanction of 90 days in prison and 90 days of home detention for his violation. According to Welch, "[t]his time was to begin at the conclusion of the hearing and was not reduced by the time he had spent incarcerated awaiting the hearing." (Appellant's brief at 2).

{¶ 17} Welch raises two specific arguments on appeal. First, he contends the trial court erred in failing to reduce his 32-month sentence for violating post-release control by six months to account for the sentence imposed by the APA (i.e., 90 days for the APA-imposed prison term and 90 days for the home detention). Second, he claims the trial court erred in failing to give him jail-time credit for time he spent incarcerated while

awaiting his APA administrative revocation hearing. (Appellant's brief at 4).

{¶ 18} Upon review, we find Welch's first argument to be persuasive, but only in part. His presentence investigation (PSI) report indicates that the APA held a hearing and administratively sanctioned him after his act of domestic violence. It appears from the record that Welch assaulted his ex-girlfriend in the early morning hours of August 2, 2015. The PSI indicates that "on August 3rd, 2015, there was a probation violation and the defendant's penitentiary sentence was re-imposed and he was returned to OSP." Although the date is one day off, this reference to a "probation violation" on August 3, 2015, seems to be a reference to Welch's act of domestic violence, which constituted a post-release control violation. The PSI does not indicate when the administrative hearing occurred. Nor does it identify the length of the administrative sanction imposed. At the conclusion of Welch's sentencing hearing, however, the trial court accepted defense counsel's representation that Welch "was given ninety days of prison time as well as ninety days of GPS [home detention], and that was ordered on November 24, 2015." (Sentencing Tr. at 7).

{¶ 19} Under R.C. 2929.141(A)(1), the trial court was obligated to reduce the prison term it imposed for Welch's post-release control violation. That statute provides: "In all cases, any prison term [judicially] imposed for the [post-release control] violation shall be reduced by any prison term that is administratively imposed by the parole board as a post-release control sanction." Here the trial court did not do so. It ordered Welch to serve a prison term of 32 months for his post-release control violation without making any reduction for the 90-day prison term that the APA already had imposed.[2] Under the plain

---

[2] At sentencing, the trial court expressed its desire to return Welch to prison for the full

language of R.C. 2929.141(A)(1), the trial court was required to reduce its 32-month prison term by three months to account for the APA's existing prison sanction. Contrary to his argument, however, Welch was not entitled to an additional three-month reduction to account for the APA's home-detention sanction. As set forth above, R.C. 2929.141(A)(1) specifically obligated the trial court to reduce its sentence only by the length of "*any prison term* that is administratively imposed by the parole board[.]" (Emphasis added).

**{¶ 20}** Finally, we are unpersuaded by Welch's argument that the trial court erred in failing to give him credit for time he spent in confinement awaiting his APA administrative hearing. The record suggests that the administrative hearing occurred on or about November 24, 2015. (Sentencing Tr. at 7). The trial court's sentencing entry gave Welch jail-time credit from August 3, 2015 (the day after his domestic violence offense) until November 27, 2015 (which appears to be when he was conveyed to prison to begin serving his APA-imposed prison sentence). (Doc. #39 at 2). The trial court also gave Welch jail-time credit from December 31, 2015 (when he was returned to the Clark County

---

amount of his unserved time on post-release control. As of the date of the sentencing hearing, the trial court found this to be two years and eight months, or 32 months. (Sentencing Tr. at 6). It appears to us, however, that Welch arguably had 34 months of unserved post-release control time remaining. He was placed on post-release control on September 25, 2013. (PSI report at 2). The APA returned him to prison 26 months later on or about November 24, 2015. (Sentencing Tr. at 7). At that time, then, he had 34 months of unserved post-release control remaining. Although two more months elapsed before the trial court sentenced Welch on January 26, 2016, he arguably did not serve any post-release control during those two months because the APA already had returned him to prison. The trial court did not attribute this 2-month difference to reflect a 90 day reduction under R.C. 2929.141(A(1), minus the one month he served back in prison from late November to late December. It appears to just be a miscalculation. In any event, the trial court determined at sentencing that Welch had only 32 months of unserved post-release control remaining, and the State has not challenged that determination.

jail for sentencing) until his re-conveyance to prison on January 27, 2016. Therefore, Welch has not identified any period of time for which the trial court failed to award him proper jail-time credit.

{¶ 21} Based on the reasoning set forth above, Welch's first assignment of error is sustained in part and overruled in part. The assignment of error is sustained insofar as the trial court erred in failing to reduce its 32-month prison term for Welch's post-release control violation by three months to account for the APA's existing prison sanction. In all other respects, the first assignment of error is overruled. We note, however, that the Ohio Department of Rehabilitation and Correction's (ODRC) online records currently do not reflect the 90-day prison sentence administratively imposed on Welch by the APA. The ODRC's web site reflects the trial court's one-year sentence for domestic violence and its 32-month sentence for violating post-release control. *See State v. Evans*, 2d Dist. Montgomery No. 24928, 2012-Ohio-5099, ¶ 8-9 (taking judicial notice of the ODRC website). We are unable to determine how ODRC has calculated the administrative sanction in their computations. Given that the trial court's 32-month sentence must be reduced by three months pursuant to R.C. 2929.141(A)(1), Welch also can be required to serve the remainder of the 90-day administrative prison sentence previously imposed. With regard to that 90-day sentence, the record suggests that he already served thirty-five days of it between November 27, 2015 (when he appears to have been conveyed from jail to ODRC's custody) and December 31, 2015 (when he was conveyed from ODRC's custody back to jail). (*See* Doc. #35, Doc. #40 at 2). He may be required to serve the remaining 55 days of that administrative sanction, separate and in addition to the trial court judicial PRC sentence which has now been reduced to reflect the administrative

sanction. In any event, proper recording and computation of Welch's 90-day administrative prison sentence is beyond the scope of this appeal. For present purposes, we note only that the ODRC web site fails to reflect the existence of that administrative sentence, the remainder of which Welch can be required to serve.

{¶ 22} Pursuant to §3(B)(2), Article IV of the Ohio Constitution and App. R. 12(B), we hereby modify the trial court's judgment by reducing Welch's 32-month prison sentence for violating post-release control to 29 months in accordance with R.C. 2929.141(A)(1). The result is an aggregate prison sentence of three years and five months rather than three years and eight months. As so modified, the trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, J., and WELBAUM, J., concur.

Copies mailed to:

Megan Farley
Jon Paul Rion
Nicole Rutter-Hirth
Hon. Douglas M. Rastatter
ODRC-Bureau of Sentence Computation