[Cite as *State v. Riddle*, 2017-Ohio-1199.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2016-CA-6 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-369 |
| | : | |
| ROBERT C. RIDDLE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____31st_____ day of _____March_____, 2017.

. . . . . . . . . .

JANNA L. PARKER, Atty. Reg. No. 0075261, Assistant Prosecuting Attorney, Miami County Prosecutor's Office, 201 West Main Street, Troy, Ohio 45373
        Attorney for Plaintiff-Appellee

SEAN BRINKMAN, Atty. Reg. No. 0088253, 10 West Monument Avenue, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Robert C. Riddle pled guilty in the Miami County Court of Common Pleas to one count of aggravated robbery and one count of breaking and entering. The trial court sentenced him to concurrent sentences totaling ten years in prison.

{¶ 2} On appeal, Riddle claims that his guilty plea was not knowingly, intelligently, and voluntarily made, because the trial court failed to inform him at his plea hearing of all of the possible consequences of violating post-release control. Riddle also claims that his trial counsel rendered ineffective assistance by advising him to plead guilty to aggravated robbery. Because Riddle's trial counsel rendered ineffective assistance, the conviction for aggravated robbery will be reversed, and the matter will be remanded for further proceedings on that charge; Riddle's conviction for breaking and entering will be affirmed.

## I. Facts and Procedural History

{¶ 3} On October 5, 2015, Riddle pled guilty as charged in a bill of information to one count of aggravated robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree, and to one count of breaking and entering, in violation of R.C. 2911.13(A), a felony of the fifth degree. Riddle was promised nothing by the State in exchange for his guilty plea.

{¶ 4} During the plea hearing, Riddle waived the reading of the bill of information on the record. The State, however, recited the facts on which Riddle's charges were based. As to the aggravated robbery charge, the State presented the following facts:

On August 29th, 2015, the Piqua Police Department was dispatched to the Walmart * * * in the City of Piqua and Miami County, Ohio, in reference to a robbery in progress. The victim in that case * * * was in the parking lot of the Walmart parking lot in her vehicle. The defendant approached her vehicle, held a gun to her throat and advised her that he was going to get in the car and she was going to drive him up the highway. The quote that she

provided the police was "Get in the car and drive me up the highway. I have a gun bitch and I will kill you." She reported to the police feeling the pressure of the gun to her neck. That [defendant] did get the keys from her, but she managed to push the gun away and -- and fought back and the defendant then dropped the keys and -- and he ran off. That is the -- the substance of the -- the incident at Walmart for which the Aggravated Robbery charge is based. There were also two independent witnesses * * * who were in the parking lot of Walmart as well who witnessed the events and reported similar events to the police as well.

{¶ 5} The prosecutor described the Piqua Police Department's investigation of the matter, including how Riddle was tracked by a canine to Willowbrook Hunt Club[1] and ultimately located at his residence. The prosecutor further stated that Riddle "cooperated with [the police], spoke with the officers and did admit to the offenses described. That he had gone to Walmart, held a gun to a female. *He did advise that the gun he used was not a real gun and that he had thrown it into a ditch. It was later recovered and found to be, in fact, a fake gun.*" (Emphasis added.)

{¶ 6} Following the State's recitation of facts, the trial court asked Riddle whether those were the facts to which he wished to enter a guilty plea. Riddle responded, "Yes, sir."

{¶ 7} Thereafter, the trial court advised Riddle of the maximum penalties for the charged offenses and that he would be subject to post-release control following his release from prison. The trial court also advised that post-release control would be

---

[1] The breaking and entering charge was based on this entrance.

mandatory for a period of five years on the aggravated robbery charge and discretionary for a period of three years on the breaking and entering charge. The court told Riddle that, if he violated post-release control, "the Adult Parole Authority can return you to prison in increments of nine months at a time, but not more than fifty percent or one-half of your original sentence." Riddle's plea form further stated that, if he committed another felony while on post-release control, he "may be subject to an additional prison term consisting of the maximum period of un-served time remaining on post-release control as set out above or 12 months, whichever is greater. This prison term must be served consecutively to any term imposed for the new felony I am convicted of committing."

{¶ 8} At the conclusion of the hearing, Riddle entered a plea of guilty to the aggravated robbery and breaking and entering counts, as charged in the bill of information. The trial court accepted Riddle's plea, finding it was knowingly, intelligently, and voluntarily entered. At a subsequent sentencing hearing, the trial court imposed a 10-year prison term for aggravated robbery and a concurrent 12-month prison term for breaking and entering.

{¶ 9} Riddle appeals from his conviction, raising two assignments of error for review.

## II. Post-Release Control Notification During Plea Hearing

{¶ 10} Riddle's first assignment of error states:

MR. RIDDLE'S PLEA WAS NOT MADE KNOWINGLY INTELLIGENTLY AND VOLUNTARILY.

{¶ 11} In his first assignment of error, Riddle contends that his guilty plea was not knowingly, intelligently, and voluntarily entered, because the trial court failed to inform

him of the possible consequences of violating post-release control at the plea hearing. Riddle claims that, as a result, the trial court did not advise him of the maximum possible penalty as mandated by Crim.R. 11(C)(2)(a) and that his guilty plea should therefore be vacated. We disagree.

{¶ 12} "Crim.R. 11(C)(2)(a) provides that, before accepting a guilty plea, a court must '[d]etermin[e] that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved * * *.' " *State v. Jones*, 2d Dist. Montgomery No. 24772, 2013-Ohio-119, ¶ 6. "The 'maximum penalty' includes any mandatory post-release control sanction[.]" *Id.* at ¶ 7. "Thus if the defendant will be subject to a period of post-release control, to comply with Crim.R. 11 the court must inform the defendant of post-release control." *Id.*

{¶ 13} "The Supreme Court of Ohio has urged trial courts to literally comply with Crim.R. 11*." State v. Jennings*, 2d Dist. Clark No. 2013 CA 60, 2014-Ohio-2307, ¶ 6, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. "However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need only substantially comply with those requirements." *Id.*, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." (Citations omitted.) *Nero* at 108.

{¶ 14} "Furthermore, when non-constitutional rights are at issue, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made generally must show a prejudicial effect." *Jennings* at ¶ 7, citing *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17. "Prejudice in this

context means that the plea would otherwise not have been entered." *Id.*

{¶ 15} Many Ohio appellate courts have reviewed issues concerning the completeness of a post-release control explanation (aside from the mandatory/discretionary and three/five year reversible errors) under a substantial compliance analysis. *See, e.g., State v. Allen*, 10th Dist. Franklin Nos. 11AP-640, 11AP-641, 11AP-642, 2012-Ohio-2986, ¶ 23; *State v. McDuffie*, 8th Dist. Cuyahoga No. 96721, 2011-Ohio-6436, ¶ 22, 24 ; *State v. Reese*, 9th Dist. Wayne Nos. 09CA0020, 09CA0023, 2009-Ohio-6507, ¶ 9; *State v. Munyan*, 5th Dist. Licking No. 08-CA-88, 2009-Ohio-2348, ¶ 18-20.

{¶ 16} In *Jones*, 2d Dist. Montgomery No. 24772, 2013-Ohio-119, this court discussed whether the trial court had complied with Crim.R. 11 when it advised the defendant of the correct term of post-release control and notified the defendant that the prison term for violation of post-release control could be "up to one half of the Court's stated prison term," but failed to notify the defendant about the nine-month-per-violation limitation for a violation of post-release control in R.C. 2943.032.[2] We held that the trial court's notice substantially complied with Crim.R. 11. *Id.* at ¶ 8. We further concluded that the trial court's failure to mention the nine-month limitation did not render the defendant's plea other than knowing, intelligent, and voluntary. We reached this conclusion based on the following reasoning:

> Jones does not assert, let alone demonstrate, that he was prejudiced -- that

---

[2]Pursuant to R.C. 2943.032, prior to accepting a guilty plea "the court shall inform the defendant personally that, * * * if the offender violates the conditions of a post-release control sanction imposed by the parole board upon the completion of the stated prison term, the parole board may impose upon the offender a residential sanction that includes a new prison term of up to nine months."

he would not have pleaded guilty had the trial court told him that the maximum possible prison term for a single violation of a post-release control condition is 9 months. We fail to see how this defendant, facing a potential of many years of re-incarceration for post release control violations, would have failed to enter his pleas if he knew those many years could only be imposed in nine month increments.

*Id.* at ¶ 11.

**{¶ 17}** More recently, we held in *State v. Redavide*, 2d Dist. Montgomery No. 26070, 2015-Ohio-3056, that a plea is not rendered invalid based on the trial court's failure to fully explain the sanctions that could be imposed for a post-release control violation. *Id.* at ¶ 19. We noted that "when the trial court substantially complies with the notice requirement of informing a defendant about post-release control sanctions, no error occurs without demonstrating that a fuller disclosure would have changed his decision to plead." *Id.*, citing *Jones*; *Jennings*, 2d Dist. Clark No. 2013 CA 60, 2014-Ohio-2307.

**{¶ 18}** In the instant case, the trial court advised Riddle at the plea hearing that he would be required to serve a mandatory five-year period of post-release control for aggravated robbery and a discretionary three-year period of post-release control for breaking and entering. The trial court also informed Riddle that he would be required to meet certain conditions while on post-release control, and that should he violate any of those conditions, he could be returned to prison in increments of nine months at a time, but not more than half of his original prison sentence.

**{¶ 19}** Despite these advisements, Riddle claims his guilty pleas were not knowingly, intelligently, and voluntarily entered because the trial court failed to advise him

of the consequences of committing a new felony while on post-release control. In support of this claim, Riddle generally cites to R.C. 2967.28 for the proposition that if a person violates post-release control by committing a new felony, the offender may be sentenced to a prison term, the maximum term being 12 months or the time remaining on post-release control, whichever is greater, to be served consecutively to any sentence imposed for the new felony. We note that in July 2002, the legislature deleted that language from R.C. 2967.28, but replaced it with substantially similar language in R.C. 2929.141(A)(1). *See* H.B. No. 327, 2002 Ohio Laws File 121.

{¶ 20} The record establishes, and the State concedes, that the trial court did not inform Riddle at the plea hearing of the consequences of committing a new felony while on post-release control. Significantly, Riddle was not on post-release control at the time of his plea. When a defendant is not under post-release control, we have not required a trial court to advise a defendant at the time of a guilty plea of the potential consequences under R.C. 2929.141 for committing a new felony while on post-release control. *Contrast State v. Landgraf*, 2d Dist. Clark No. 2014 CA 12, 2014-Ohio-5448 (when defendant was on post-release control, trial court erred in failing to inform defendant at the plea hearing for a new felony that it could revoke post-release control and that, if it did, a consecutive sentence would be imposed). And, the plea form signed by Riddle, which Riddle indicated he read and understood, did advise him of these consequences. *See State v. Welch*, 2017-Ohio-314, __ N.E.3d __, ¶ 12 (2d Dist.), distinguishing *Landgraf* and *State v. Branham*, 2d Dist. Clark No. 2013 CA 49, 2014-Ohio-5067.

{¶ 21} The trial court's failure to orally advise Riddle of the consequences of committing a new felony while on post-release control at the plea hearing does not

warrant vacating Riddle's plea in this case, because the record establishes that the court's overall advisement regarding post-release control substantially complied with Crim.R. 11(C)(2)(a) and Riddle has not demonstrated that the court's omission had a prejudicial effect. *See Jones*, 2d Dist. Montgomery No. 24772, 2013-Ohio-119; *Jennings*, 2d Dist. Clark No. 2013 CA 60, 2014-Ohio-2307. Specifically, Riddle does not assert that he would not have entered his guilty plea had he known the consequences of committing a new felony while on post-release control.

{¶ 22} Riddle's first assignment of error is overruled.

### III. Ineffective Assistance of Counsel

{¶ 23} Riddle's second assignment of error states:

MR. RIDDLE WAS DENIED HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 24} Under his second assignment of error, Riddle contends that his trial counsel provided ineffective assistance by advising him to plead guilty to aggravated robbery when there was insufficient evidence that he had a "deadly weapon" on his person or under his control at the time of the offense. Specifically, Riddle claims that he pled guilty based on the facts presented by the State at his plea hearing, which indicated that he used a fake gun during the course of the offense. According to Riddle, the fake gun did not satisfy the "deadly weapon" element of aggravated robbery, given that there was nothing in the record indicating that he used or threatened to use the gun as a bludgeon.

{¶ 25} We evaluate ineffective-assistance-of-counsel arguments in light of the two-pronged analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under that analysis, to reverse a conviction based on ineffective

assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and fell below an objective standard of reasonable representation, and that the defendant was prejudiced by counsel's performance. *Id.* at 668; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To succeed on such a claim, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the defendant's trial would have been different. *Id.*

{¶ 26} A plea of guilty is a complete admission of guilt. *E.g., State v. Faulkner*, 2d Dist. Champaign No. 2013-CA-43, 2015-Ohio-2059, ¶ 9. Consequently, a guilty plea waives all appealable errors, including claims of ineffective assistance of counsel, except to the extent that the errors precluded the defendant from knowingly, intelligently, and voluntarily entering his or her guilty plea. *E.g., State v. Frazier*, 2016-Ohio-727, 60 N.E.3d 633, ¶ 81 (2d Dist.). If a defendant pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases." (Citations omitted.) *Frazier* at ¶ 81. Furthermore, "[o]nly if there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty but would have insisted on going to trial will the judgment be reversed." *State v. Huddleson*, 2d Dist. Montgomery No. 20653, 2005-Ohio-4029, ¶ 9, citing *Hill v. Lockhart*, 474 U.S. 52, 52-53, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). (Other citations omitted.)

{¶ 27} "For counsel to render effective assistance to a criminal defendant, [he or] she should, at the least, understand the basis of the criminal charges and possible defenses of those charges." (Citation omitted.) *State v. Dalton*, 153 Ohio App.3d 286, 2003-Ohio-3813, 793 N.E.2d 509, ¶ 29 (10th Dist.). " '[I]f an attorney does not grasp the

basics of the charges and the potential defenses to them, an accused may well be stripped of the very means that are essential to subject the prosecution's case to adversarial testing.' " *Id.*, quoting *Scarpa v. Dubois,* 38 F.3d 1, 10 (1st Cir.1994).

{¶ 28} A plea may be involuntary if the accused " 'has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.' " *State v. Montgomery*, Ohio Sup.Ct. Slip Opinion No. 2016-Ohio-5487, ¶ 42, quoting *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), fn. 13. "Thus, 'a plea does not qualify as intelligent unless a criminal defendant first receives "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." ' " *Id.*, quoting *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941). "In determining whether a defendant understood the charge, a court should examine the totality of the circumstances." (Citations omitted.) *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 56.

{¶ 29} In short, due to his guilty plea, Riddle may raise a claim of ineffective assistance of counsel based on his counsel's advice to plead guilty to aggravated robbery only if his counsel's alleged error rendered his plea other than knowing, intelligent, and voluntary.

{¶ 30} Riddle pled guilty to aggravated robbery, in violation of R.C. 2911.01(A)(1). That statute provides:

No person, in attempting or committing a theft offense, * * * or in fleeing immediately after the attempt or offense, shall do any of the following * * *

*Have a deadly weapon on or about the offender's person or under the offender's control* and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

(Emphasis added.) The term " '[d]eadly weapon' means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A).

{¶ 31} The Supreme Court of Ohio has recognized that "convictions for aggravated robbery have been upheld even where a toy gun or an inoperable gun was used in the commission of the theft offense since such devices could be used as bludgeons and were therefore 'capable of inflicting death' pursuant to R.C. 2911.01(A)(1) and R.C. 2923.11(A)." *State v. Gaines*, 46 Ohio St.3d 65, 68, 545 N.E.2d 68 (1989). More recently, and prior to the date of Riddle's plea hearing, the Supreme Court clarified that "an inoperable pistol that is not used as a bludgeon is not a 'deadly weapon' for purposes of R.C. 2923.12, which prohibits carrying a concealed weapon." *In re J.T.*, 143 Ohio St.3d 516, 2015-Ohio-3654, 39 N.E.3d 1240, ¶ 9. The court explained that an inoperable pistol is "no longer a deadly weapon unless there was some evidence presented that it was used as a bludgeon or otherwise used, possessed, or carried as a weapon." *Id.* at ¶ 6.

{¶ 32} We have also acknowledged that an inoperable gun may be a "deadly weapon" if there is "evidence that the defendant actually used or threatened to use it as a bludgeon." *State v. Macias*, 2d Dist. Darke No. 1562, 2003-Ohio-1565, ¶ 37, citing *State v. Nelson*, 2d Dist. Montgomery No. 14775, 1995 WL 491084, *3 (Aug. 18, 1995). (Other citation omitted.) We explained in *Nelson* that:

Almost any hard object is capable of being used as a bludgeon. The question is whether the object is not only capable of inflicting death, but also designed or specially adapted for use as a weapon or possessed, carried or used as a weapon. R.C. 2923.11(A). Thus, a blank-firing starting pistol, while capable of inflicting death if used as a bludgeon, is not a deadly weapon unless it is possessed, carried, or used as a bludgeon, and if there is no evidence that it was intended to be used or threatened to be used as a bludgeon, then it is not a deadly weapon. *State v. Luckey*, [322 N.E.2d 354 (1st Dist.1974)], which involved a previous version of R.C. 2911.01, but in which the court indicated that the result would be the same under the present statute.

*Nelson* at *3.

{¶ 33} Here, the record of the plea hearing indicates that the gun Riddle used during the robbery was a "fake gun." At the plea hearing, Riddle admitted to approaching the victim's parked vehicle, pressing the fake gun to her throat, and saying "get in the car and drive me up the highway. I have a gun bitch and I will kill you." After Riddle got the keys from the victim, the victim pushed the gun away, fought back, and Riddle dropped the keys and ran away. Nothing in the record indicates that Riddle attempted to or actually used the fake gun as a bludgeon. In other words, there is nothing indicating that the fake gun was used in a manner in which it could have been capable of inflicting death. Accordingly, the facts recited by the State at the plea hearing do not support the "deadly weapon" element required for aggravated robbery.

{¶ 34} We note that "[a] guilty plea admits the facts set forth in the indictment, not

the facts set forth at the plea hearing." (Citation omitted.) *State v. Greathouse*, 158 Ohio App.3d 135, 2004-Ohio-3402, 814 N.E.2d 502, ¶ 8 (2d Dist.). Pleading guilty is "an admission of every material fact well pleaded in the indictment, dispensing with the necessity of proving them, and authorizing the court to proceed to judgment." (Citations omitted.) *Id.* at ¶ 7. We have rejected the notion that "when * * * a defendant has been informed of the charge in the indictment and has had a full opportunity to discuss that charge with his attorney, slight variations in the description of the offense at the plea hearing will create a presumption that the defendant did not understand the nature of the charges against him." *Id.* at ¶ 8.

{¶ 35} In *Greathouse*, the defendant pled guilty to grand theft auto. The prosecutor's statement of facts for that offense established that on May 30, 2003, Greathouse had borrowed a car from someone in Xenia, with that person's permission. The owner of the car understood that Greathouse would go to Dayton to get some clothing and then would return. The prosecutor specifically stated that "the car was not returned, thus constituting a taking and with purpose to deprive the owner of property." *Id.* at ¶ 10. On appeal, Greathouse argued that the State's facts described unauthorized use of a vehicle, but not grand theft auto. He also claimed that there was "at least an ambiguity that [he] did not understand one element of the charge of grand theft auto."

{¶ 36} We rejected Greathouse's claim that the prosecutor's statement of facts did not support the indicted offense. At the outset, we rejected the suggestion that "slight variations in the description of the offense at the plea hearing will create a presumption that the defendant did not understand the nature of the charges against him" when the defendant has been informed of the indicted charge and has had an opportunity to discuss

the charge with his attorney. *Id.* at ¶ 8. Moreover, we held that the prosecutor's statement of facts adequately described the charged offense. We commented that the prosecutor's statement of facts "permit[ted] inferences of deception and of purpose to deprive the owner of the property, and it is inconsistent with the offense of which Greathouse claims he should have been convicted – unauthorized use of a vehicle, R.C. 2913.03." *Id.* at ¶ 11.

{¶ 37} We nevertheless reversed Greathouse's conviction, because the colloquy between Greathouse and the trial court indicated that Greathouse might not have understood the deception and purpose-to-deprive elements of grand theft auto. During the plea hearing, Greathouse indicated that he had understood the prosecutor's statement of facts and that those were the facts to which he wished to enter a plea of guilty. However, when the court next asked Greathouse if he was entering a guilty plea because "that is what you did, you are guilty," Greathouse responded, "I mean, the car got stolen from me. * * * But I guess I'm wrong for not coming right back, so yes, sir." We noted that the prosecutor's statement, while sufficient to support grand theft auto, "was not so thorough as to foreclose any reasonable possibility that Greathouse believed he was guilty merely for failing to timely return the car, whatever the reason for his failure to do so." *Id.* at ¶ 26. We stated that Greathouse's oral responses "were a red flag to the trial court that further inquiry was necessary to ensure that he understood the deception and purpose-to-deprive elements of the offense and that he was admitting these elements of the offense." *Id.* at ¶ 28.

{¶ 38} Here, the bill of information charging Riddle contained all elements of aggravated robbery, including the "deadly weapon" element. In addition, the plea form

signed by Riddle stated that he had "received a true copy of the indictment/information at least 24 hours before being called upon to plead" and that Riddle had "read or had read to [him] the indictment/information." The plea form also stated that Riddle "underst[ood] all the facts and circumstances about the charge(s) made against [him] in the indictment/information." Furthermore, at the plea hearing, Riddle advised the trial court that he had read and understood the plea form, received a copy of the bill of information, and that his trial counsel had answered all of his questions regarding the bill of information.

{¶ 39} Nevertheless, while the State was not required to establish the factual basis for a felony guilty plea, the State provided a statement of facts; those facts not only failed to establish the "deadly weapon" element of aggravated robbery, but affirmatively disproved that element as a matter of law. The negation of an element of the offense in the prosecutor's statement of facts amounts to more than a "slight variation" from the description of the charge as set forth in the bill of information (which was not read on the record at the plea hearing). All the required elements of aggravated robbery were never actually established at the plea hearing. Although Riddle generally stated at the plea hearing that he was pleading guilty to the charges in the bill of information, Riddle specifically indicated that his guilty plea was based on the facts presented by the State. Riddle's comment, therefore, indicates a lack of understanding of the "deadly weapon" element of the offense. Moreover, there is nothing in the plea hearing transcript to suggest that Riddle's counsel was aware that a fake gun failed to satisfy the "deadly weapon" requirement and that counsel had discussed this possible defense with Riddle prior to the plea.

{¶ 40} Based on the totality of the circumstances, we find that Riddle's plea was rendered less than knowing, intelligent, and voluntary as a result of his trial counsel's failure to recognize that the "deadly weapon" element of aggravated robbery was not satisfied, and in advising Riddle to plead guilty despite this deficiency. Specifically, the "deadly weapon" element of aggravated robbery was affirmatively negated in the State's presentation of facts at the plea hearing, and Riddle expressly stated that his plea was based on those facts. This sufficiently demonstrates that Riddle did not fully understand the nature of the "deadly weapon" element of aggravated robbery at the time he entered his guilty plea. Thus, trial counsel's advice to plead guilty to aggravated robbery necessarily resulted in Riddle entering a guilty plea that was less than knowing, intelligent, and voluntary.

{¶ 41} As for prejudice, it is theoretically possible that the advice to plead guilty to the aggravated robbery, despite the State's inability to prove the deadly weapon element, resulted in a knowing, intelligent, and voluntary plea. For example, it is possible that a defendant would elect to enter such a plea in exchange for an agreement by the State not to file charges for other offenses, not to file more serious charges, and/or to recommend a favorable sentence.

{¶ 42} However, in this case, these hypothetical possibilities are belied by the record. The record reflects that there was no "underlying agreement" between Riddle and the State; Riddle pled to the charged offenses and there was no agreement as to sentencing. It appears that no presentence investigation was conducted (the plea agreement indicated that Riddle wished to waive a PSI), and Riddle stated at the plea hearing that he was not on probation, parole, post-release control, or community control.

There is no indication that any additional charges were pending or could be affected by Riddle's plea. Accordingly, based on the record before us, there is a reasonable likelihood that Riddle would not have entered his guilty plea to aggravated robbery had he understood from counsel that a fake gun (used in the manner that he used it) would not satisfy the deadly weapon element of aggravated robbery.

{¶ 43} Riddle's second assignment of error is sustained.

## IV. Conclusion

{¶ 44} Although Riddle's use of a "fake gun" affects the charge of which Riddle can be convicted, we are not unsympathetic to the impact of Riddle's actions on the victim in this case. The victim's letter to the trial court for Riddle's sentencing reflected that Riddle's words and actions continue to affect her and that various circumstances now make her fearful. At sentencing, the trial court noted that, from the victim's perspective, whether Riddle had a real gun or not "doesn't really matter." Our legal conclusion as to the aggravated robbery charge in no way diminishes the seriousness of Riddle's actions or the trauma suffered by the victim.

{¶ 45} The judgment of conviction for aggravated robbery will be reversed, and the matter will remanded for further proceedings on that charge. Given that Riddle and the State had no underlying agreement regarding his guilty pleas, we find no basis to conclude that Riddle's decision to plead guilty to breaking and entering was affected by his plea to aggravated robbery. Accordingly, the trial court's judgment as to the breaking and entering charge will be affirmed.

. . . . . . . . . . . .

DONOVAN, J., concurs.

HALL, P.J., concurring in part and dissenting in part:

{¶ 46} I agree that the trial court substantially complied with advising appellant Riddle at his plea of the consequences of committing a new felony while on post-release control and, because he was not currently on post-release control, there was no prejudicial effect. However, on this record, I disagree that his plea demonstrates ineffective assistance of counsel, and I therefore dissent from the reversal of his aggravated-robbery conviction.

{¶ 47} I agree that the record does not indicate that Riddle attempted to use or actually used the "fake gun" as a bludgeon, but the record does not reveal the weapon's composition, weight, size, or whether it has sharp edges, any of which could assist in determining whether it could be used as a deadly weapon. More importantly, we have no evidence regarding counsel's advice to Riddle, and we have no statement from Riddle himself contending that he was misinformed. It may be that Riddle received accurate legal advice and made a free and voluntary choice to enter his plea. Furthermore, we must evaluate the ineffective-assistance claim in the context of the plea itself, which was by way of a bill of information. We know not whether there was a potential for different or additional charges or whether there was a negotiated resolution. Because the record is deficient in these aspects, Riddle's assertion of ineffective assistance of counsel should have been addressed in a motion to withdraw his plea or a post-conviction relief petition where a record could be made about what advice he received and whether his plea was voluntarily and intelligently made.

{¶ 48} In the similar case, *State v. Goodner*, 195 Ohio App.3d 636, 2011-Ohio-5018, 961 N.E.2d 254 (2d Dist.), the defendant pled no contest to multiple counts of

aggravated robbery and contended on appeal that his trial counsel was ineffective for failing to advise him regarding the evidence necessary to prove whether a BB gun is a deadly weapon, i.e., that there must be evidence adduced concerning the gun's capability of inflicting death. *Id.* at ¶ 11, 16, 22. Like Riddle, the defendant in *Goodner* asserted on appeal that had he been made aware of this information by his attorney, he would have elected to go to trial as opposed to entering a plea. *Id.* at ¶ 16. Goodner also argued that his trial counsel's alleged ineffectiveness rendered his plea less than knowing and voluntary. *Id.* at ¶ 24.

{¶ 49} We overruled Goodner's ineffective-assistance claim because he pled no contest to an indictment that contained the deadly-weapon element in R.C. 2911.01(A)(1). Specifically, we held that by entering a plea of no contest to the indictment, Goodner admitted that he used a deadly weapon and the record contained no facts to support his assertion that his trial counsel was ineffective. *Id.* at ¶ 22-23. We also held that Goodner's no-contest plea was knowingly and voluntarily entered because our review of the plea hearing indicated that the trial court complied with all of the mandates of Crim.R. 11(C)(2). We further found that Goodner indicated that he understood the matters explained to him by the trial court. *Id.* at ¶ 30.

{¶ 50} I see little difference between the case at hand and *Goodner*. Under the specific facts in the record of this case, Riddle cannot prevail on a claim that his trial counsel's alleged deficient performance rendered his plea less than knowing and voluntary. The bill of information charging Riddle contained all elements of aggravated robbery, including the "deadly weapon" element. In addition, the plea form signed by Riddle stated that he had "received a true copy of the indictment/information at least 24

hours before being called upon to plead" and that Riddle had "read or had read to [him] the indictment/information."   (Petition to Enter Plea of Guilty, Doc. #5). The plea form further stated that Riddle "underst[ood] all the facts and circumstances about the charge(s) made against [him] in the indictment/information."   (*Id.*). At the plea hearing, Riddle did not indicate a lack of understanding of the nature of the aggravated robbery charge contained in the bill of information.

{¶ 51} In *State v. Cooperrider*, 4 Ohio St.3d 226, 228, 448 N.E.2d 452 (1983), the Ohio Supreme Court observed: "[I]t is impossible to determine whether the attorney was ineffective in his representation of appellant where the allegations of ineffectiveness are based on facts not appearing in the record." Riddle's appellate claim that his trial counsel misadvised or failed to advise him that a "fake gun" is not necessarily a deadly weapon for purposes of R.C. 2923.11(A) involves facts that do not appear in the record. Because the record indicates that Riddle was made aware of all of the elements of the aggravated robbery offense to which he pled guilty via the bill of information, and the trial court complied with the mandates of Crim.R. 11(C) at the plea hearing, and the record does not indicate whether defense counsel's advice was deficient, I believe we are unable to determine that Riddle's guilty plea was less than knowing, intelligent, and voluntary.   As a result, Riddle's ineffective-assistance claim must fail.

{¶ 52} Accordingly, I dissent from the reversal of Riddle's aggravated-robbery conviction.   In all other respects, I concur in the majority opinion.

. . . . . . . . . .

Copies mailed to:

Janna L. Parker
Sean Brinkman
Hon. Timothy Campbell (sitting by assignment)