[Cite as *State v. Davis*, 2019-Ohio-1904.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-49 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-542A |
| | : | |
| BRANDON DAVIS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of May, 2019.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, and JOHN LINTZ, Atty. Reg. No. 0097715, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorneys for Plaintiff-Appellee

JOHNNA M. SHIA, Atty. Reg. No. 0067685, P.O. Box 145, Springfield, Ohio 45506
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** After pleading guilty to burglary and receiving stolen property, Brandon Davis was sentenced to a prison term of eight years for the burglary offense, one year for the receiving stolen property offense, and one year in a 2014 case for which he was on post-release control at the time of the 2017 offenses. The trial court ordered the sentences to run consecutively, for an aggregate term of 10 years. Davis appeals from the judgment entry of conviction. The judgment of the trial court will be affirmed as to the receiving stolen property offense, reversed as to the burglary offense, and the matter remanded for further proceedings.

### Factual and Procedural Background

**{¶ 2}** On the evening of September 4, 2017, a Clark County resident called 911 to report that she and her husband had arrived home to find an unknown man and woman exiting the caller's house while "carrying bags" that the intruders dropped before fleeing in a passing car. The bags were found to contain rifles and jewelry taken from the caller's home.

**{¶ 3}** Based on the caller's description of the vehicle in which the intruders fled, sheriff's deputies stopped a car driven by Stephen Mitchem, Jr., in which Davis was a front seat passenger and Winter Ann Eggers was a rear seat passenger. Upon searching Eggers's purse and her person, deputies found "a couple items * * * taken from another burglary." Those items included a checkbook and a debit card reported stolen on August 29, 2017 from a different Clark County home.

**{¶ 4}** Earlier on September 4, 2017, a local check-cashing business had called the victims of the August 29 burglary to tell them that "Brandon Davis was trying to cash a $600.00 check" from their stolen checkbook. Although the man who attempted to cash

that check left before a deputy responded to the check-cashing location, the deputy collected the stolen check and a picture of the man (Davis) who had tried to cash it.

{¶ 5} Davis, Eggers and Mitchem were transported to the Clark County jail, where Mitchem voluntarily submitted to questioning and "stated he had nothing to do with the burglary." All three were charged with varying offenses.

{¶ 6} On September 11, 2017, Davis and Eggers, Davis's girlfriend, were each indicted by a Clark County grand jury on one count of aggravated burglary in violation of R.C. 2911.11(A)(2), a first-degree felony, and one count of burglary in violation of R.C. 2911.12(A)(2), a second-degree felony. Those counts related to the September 4 burglary and carried firearm specifications. In addition, the indictment charged each co-defendant with a separate count of receiving stolen property in violation of R.C. 2913.51(A), a fifth-degree felony. The receiving stolen property count related to items taken during the August 29 burglary.

{¶ 7} As to the Count Two burglary offense, Davis's indictment stated as follows:

That on or about September 4, 2017, in Clark County, Ohio, BRANDON CHASE DAVIS * * * did *by force, stealth, or deception*, trespass in an occupied structure, or in a separately secured or separately occupied portion of an occupied structure that is *a permanent or temporary habitation* of another, *when a person other than an accomplice of the offender, is present, or likely to be present*, with purpose to commit in the habitation a criminal offense, in violation of Section 2911.12(A)(2) of the Ohio Revised Code, and against the peace and dignity of the State of Ohio.

(Emphasis added.) (Doc. #10). That portion of the indictment tracks almost verbatim the

language of the burglary statute, R.C. 2911.12(A)(2).

{¶ 8} Pursuant to a written plea agreement,[1] Davis pled guilty to the Count Two charge of burglary and the Count Three charge of receiving stolen property, with the Count One aggravated burglary charge and both firearm specifications to be dismissed. (11/13/17 Plea Transcript ("Tr.")). Asked by the trial court "to put the terms" of the plea agreement "on the record" (*id.*, p. 3), the State offered the following version of Davis's burglary offense, which differs from the language of the indictment and the burglary statute:

> [Prosecutor]: The facts Mr. Davis will be pleading guilty to are on or about September 4, 2017[,] here in Clark County, Ohio, he did trespass into an occupied structure with the purpose inside of that occupied structure to commit a criminal offense, that being a theft offense, Your Honor * * *.
>
> As alleged in count three, [at] the same time, September 4, 2017, Mr. Davis was found to be or have possession of a check belonging to another individual. That check was also reported stolen, Your Honor.
>
> [Trial Court]: Is that a full statement of the plea agreement?
>
> [Defense counsel]: Yes, Your Honor. * * *

(Plea Tr., p. 4).

{¶ 9} Subsequently, as part of its colloquy advising Davis of the consequences of his plea as well as the rights he would be waiving, the trial court set forth a third version of the offenses to which Davis was pleading guilty, as follows:

---

[1] The written plea form stated the name of the charges Davis was pleading to – i.e., burglary and receiving stolen property – and the maximum penalty for each, but did not state the elements or facts of the offenses. (*See* Doc. #9).

[Trial Court]: If you chose to exercise that right [to a jury trial], you would have the right to require the State to prove beyond a reasonable doubt every element of these two offenses.

The elements of the burglary offenses [sic] are that on or about September 4, 2017 at Clark County, Ohio, you did by force, stealth or deception trespass in an occupied structure when a person other than an accomplice of the offender was present or likely to be present with purpose to commit therein a criminal offense.

The receiving stolen property elements are that on or about September 4, 2107 at Clark County, Ohio, you did receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property had been obtained through the commission of a theft offense, and the property involved was a check.

Do you understand these are the elements the State would have to prove?

[Davis]: Yes, sir.

* * *

[Trial Court]: Do you understand all of these rights?

[Davis]: Yes, sir.

[Trial Court]: Do you understand that by entering this guilty plea you would be waiving all of these rights?

[Davis]: Yes, sir.

[Trial Court]: With that understanding[,] how then did you want to

plead to the offense of burglary and receiving stolen property?

[Davis]: Guilty.

(Plea Tr., pp. 8-10).

{¶ 10} A presentence investigation ("PSI") report prepared for purposes of sentencing revealed that Davis was 31 years old, unemployed, and homeless. Davis said that prior to his incarceration for these offenses, he had been "stealing to make money for drugs." He reported first using alcohol and marijuana at the age of eight and gradually progressing to "heavy drugs," eventually injecting heroin "on a daily basis" before being incarcerated in September 2017.

{¶ 11} Davis had an extensive criminal record as an adult,[2] including two prior felony theft offenses in 2005, for which he received an 11-month prison sentence; two additional theft offenses in 2014; and a felony burglary offense in 2014, for which he was sentenced to 12 months in prison. Davis was on post-release control for the 2014 burglary when he committed the offenses in this case. Davis attributed his and Eggers's joint crimes to their heroin addiction, claiming that in exchange for drugs, they had targeted random homes at the direction of their drug dealer.[3] The report stated, however, that Davis and Eggers "had very different recollections of the offenses."

{¶ 12} Davis recounted previous drug treatment efforts that had been unsuccessful. He was "kicked out of residential treatment," after which he "tried to continue outpatient services but then * * * relapsed." He also failed to complete another

---

[2] The PSI indicated that Davis also had a prior felony charge as a juvenile, but the juvenile court did not respond to a request for Davis's juvenile records.

[3] Davis identified Mitchem as the alleged dealer.

outpatient treatment program "due to going to prison." Although he was not on any prescribed medications at the time of the PSI, Davis said that he had been diagnosed with some mental health issues. The PSI report assessed Davis as posing a "high" risk of recidivism.

{¶ 13} At Davis's sentencing hearing, the trial court stated that it had reviewed the PSI and victim impact statements "from each set of victims." (12/4/17 Disposition Tr., p. 3). After hearing from defense counsel, Davis, and the prosecutor, the trial court stated in part:

> In reviewing your prior record[,] you have served three prior prison terms. You also have nine prior theft-related convictions. One of your prior convictions is for burglary.

> You were on post-release control on that case at the time you committed the burglary and the receiving stolen property in this case.

> I do find that consecutive sentences are necessary to protect the public from future crime and to * * * punish the defendant. That they are not disproportionate to the seriousness of his conduct and to the danger he poses to the public.

> And that his history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the defendant.

> And again, the offenses in this case were committed while the defendant was on post-release control for a prior burglary offense, and that he has less than one year remaining on post-release control.

For the receiving stolen property offense, felony of the fifth degree, the Court is going to order that the defendant be sentenced to the maximum sentence of one (1) year in the Ohio State Penitentiary.

For the burglary offense, felony of the second degree, the Court is going to order that the defendant be sentenced to the maximum penalty of eight (8) years in the Ohio State Penitentiary.

And the Court does find that the defendant violated his post-release control and based upon that violation the Court is going to order that the defendant be sentenced to one (1) year in the Ohio State Penitentiary.

These sentences will all be consecutive for a total sentence of ten (10) years in the Ohio State Penitentiary.

(*Id.*, pp. 8 -10). A written judgment entry memorializing Davis's conviction and sentence, including the trial court's findings supporting consecutive sentences, followed.

{¶ 14} We granted Davis's motion for leave to pursue a delayed appeal from that judgment. He asserts two assignments of error:

1) The Trial Court erred in accepting Davis'[s] guilty plea because it was not knowingly nor voluntarily entered.

2) Davis'[s] sentence was contrary to law because it was disproportionate to the crime committed and inconsistent with that of his co-defendant and similar offenders.

### *Assignment of Error #1 – Guilty Plea Not Knowing and Voluntary*

*a. Standard of Review/Applicable Law*

{¶ 15} In order to comport with due process and be constitutionally valid, a guilty

plea must be entered knowingly, intelligently, and voluntarily. *State v. Miller*, 2017-Ohio-478, 84 N.E.3d 150, ¶ 9 (2d Dist.), citing *State v. Bateman*, 2d Dist. Champaign No. 2010CA15, 2011-Ohio-5808, ¶ 5, and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). To determine whether a particular plea met those criteria, " 'an appellate court examines the totality of the circumstances through a *de novo* review of the record to ensure that the trial court complied with constitutional and procedural safeguards.' " (Italics sic.) *State v. Redavide*, 2d Dist. Montgomery No. 26070, 2015-Ohio-3056, ¶ 10, quoting *State v. Barner*, 4th Dist. Meigs No. 10CA9, 2012-Ohio-4584, ¶ 7.

{¶ 16} "In order for a plea to be knowing, intelligent, and voluntary, the trial court must comply with Crim.R. 11(C)." (Citation omitted.) *State v. Russell*, 2d Dist. Clark No. 10-CA-54, 2011-Ohio-1738, ¶ 6. "Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty or no contest." *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8. "By following this rule, a court ensures that the plea is knowing, intelligent, and voluntary." *State v. Cole*, 2d Dist. Montgomery No. 26122, 2015-Ohio-3793, ¶ 12, citing *Redavide* at ¶ 12.

{¶ 17} Crim.R. 11(C)(2) requires the court to address the defendant personally and (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against

him or her, to have compulsory process for obtaining witnesses, and to require the State to prove guilt beyond a reasonable doubt at a trial at which he or she cannot be compelled to testify against himself or herself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

**{¶ 18}** The Supreme Court of Ohio has urged literal compliance with Crim.R. 11. *See State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need comply only substantially with those requirements. *See, e.g.*, *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.* In contrast, the trial court must comply strictly with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Clark* at ¶ 31.

**{¶ 19}** If there is a lack of substantial compliance regarding a certain non-constitutional right, then the reviewing court is to determine whether there was a partial or a total failure to comply with the rule. *State v. Cruz-Ramos*, 7th Dist. Mahoning No. 17 MA 0077, 2019-Ohio-779, ¶ 11, citing *Clark* at ¶ 32. A complete failure to advise of a non-constitutional right requires that the plea be vacated without an analysis of prejudice. *Id.*, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22, 25. "However, if the court's advisement on a non-constitutional right is considered partial compliance with the rule, then the plea cannot be vacated unless the defendant demonstrates prejudice." *Id.*, citing *Clark* at ¶ 32, 40.

b. *Davis's Guilty Plea*

**{¶ 20}** Davis contends that his guilty pleas were not knowing, intelligent, and

voluntary for three reasons: (1) his plea agreement with the State was "illusory and unconscionable," (2) the trial court failed to advise Davis of the effect of his guilty plea, and (3) the facts on which the State relied did not constitute the offense of burglary, meaning Davis's plea to that offense was invalid.[4] We will address those arguments separately and in the order most conducive to our analysis.

(i)      Alleged "illusory and unconscionable" nature of the plea agreement

{¶ 21} Davis argues that the State "overcharged" him with aggravated burglary and two firearm specifications despite knowing that it could not prove beyond a reasonable doubt that Davis used a firearm to facilitate his crimes. According to Davis, the only weapons involved in these offenses were the guns taken from one house on September 4, 2017 and later found inside a bag Davis and Eggers dropped when they fled. He contends that the State could not obtain a conviction for aggravated burglary and the firearm specifications based on guns that Davis did not actually use in committing the offenses. In essence, Davis maintains that the plea agreement was "illusory and unconscionable" because he received no benefit from pleading guilty to burglary and receiving stolen property in exchange for the dismissal of charges on which he contends the State could not have prevailed.

{¶ 22} We previously have characterized such an argument as contending "that the plea bargain lacked consideration." *See State v. McMahon*, 2d Dist. Clark No. 2014-CA-98, 2015-Ohio-2878, ¶ 20. A plea agreement is a contract subject to the principles of contract law. *Id.* at ¶ 18. Although courts generally "may not inquire into the adequacy of

---

[4] Although Davis's final argument in support of this assignment of error is directed toward only his guilty plea to burglary, the other two arguments appear to challenge both guilty pleas.

consideration, * * * whether there is consideration *at all* is a proper question for a court." (Emphasis added.) *Id.*, quoting *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 43.

{¶ 23} "Normally, the dismissal of another criminal charge constitutes sufficient consideration for a plea agreement." *Id.*, quoting *State v. Moore*, 4th Dist. Adams No. 13CA965, 2014-Ohio-3024, ¶ 19, citing *State v. Smith*, 2d Dist. Greene No. 90 CA 87, 1992 WL 206739, *7 (Aug. 26, 1992). In *Moore*, the appellate court noted that "any discussion of what evidence the state would have relied on to support each conviction at trial requires some speculation because of the plea agreement." *Moore* at ¶ 21. The same is true here. Nevertheless, the court in *Moore* noted that "a lesser sentence is not the only benefit to be received by a defendant deciding to plead guilty to a charged offense" – for instance, the defendant also receives the benefit of "avoid[ing] the additional publicity that a trial might generate."[5] *Id.* at ¶ 22. "Because some consideration exist[ed] for the plea agreement" in *Moore*, the court there concluded that it "c[ould not] inquire into the adequacy of the consideration." *Id.*, citing *Williams* at ¶ 17.

{¶ 24} In *McMahon*, we adopted the Fourth District's reasoning from *Moore*, concluding that "no reasonable argument can be made that the plea was not intelligent, voluntary, or knowing, due to a lack of consideration." *McMahon* at ¶ 15. The same result is warranted as to Davis's pleas. We cannot conclude how a trial on the original charges and specifications would have concluded. That was a decision that Davis had to make in considering the plea negotiations. Because dismissal of the aggravated burglary count and the firearm specifications constituted some consideration for the plea agreement

---

[5] This conclusion does not appear to be relevant here.

Davis accepted, Davis's challenge to the adequacy of that consideration is not well taken.

(ii)     Plea to burglary as voidable[6]

{¶ 25} Davis urges that the State's plea-hearing description of "[t]he facts [to which] Mr. Davis will be pleading guilty" (Plea Tr., p. 4) "do[es] not constitute the offense of Burglary," and that his guilty plea to that offense therefore was uninformed and should be set aside. Davis's argument relies on the "facts" as "placed on the record *at the plea hearing*" by the prosecutor (emphasis added.) (*see* Appellant's Brief, p. 10), which differ from the description of the burglary offense set forth in the indictment or that read by the trial court during the plea hearing.

{¶ 26} As we recognized above, the indictment's description of the Count Two burglary charge against Davis is nearly identical to the language of R.C. 2911.12(A)(2), which provides:

(A) No person, *by force, stealth, or deception*, shall do any of the following:

* * *

(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is *a permanent or temporary habitation* of any person *when any person other than an accomplice of the offender is present or likely to be present*, with purpose to commit in the habitation any criminal offense[.]

---

[6] Although Davis suggests that his guilty plea to burglary is "void" (Appellant's Brief, p. 9), generally "a judgment is void ab initio only when a court acts without subject-matter jurisdiction." *Dunbar v. State*, 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, ¶ 15. Where a trial court "erred in the exercise of its jurisdiction" but "did not act without jurisdiction" in accepting a guilty plea, the resulting judgment "[i]s voidable rather than void." *Id*. "Voidable" judgments "can be set aside only if successfully challenged on direct appeal." *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 28.

(Emphasis added.)

**{¶ 27}** The version of the charge offered by the State at the time of Davis's guilty plea varies from the language of the burglary statute and Davis's indictment, however. At the plea hearing, the State described the "facts [to which] Mr. Davis will be pleading guilty" as follows:

> [O]n or about September 4, 2017[,] here in Clark County, Ohio, [Davis] did trespass into an occupied structure with the purpose inside of that occupied structure to commit a criminal offense, that being a theft offense, Your Honor * * *.

(Plea Tr., p. 4).

**{¶ 28}** Absent from "[t]he facts [to which] Mr. Davis will be pleading guilty" as read into the hearing record by the prosecutor was any mention of Davis's gaining entry "by force, stealth, or deception," or that the structure involved was "a permanent or temporary habitation of any person." *See* R.C. 2911.12(A)(2). Neither did the prosecutor state that some person other than Davis or his accomplice was "present or likely to be present" when Davis entered that structure. *See id.* Indeed, the police report from the September 4, 2017 incident (attached to the PSI) indicates that the residents at that address were not at home when Davis and Eggers entered their house.

**{¶ 29}** As a general rule, "[a] guilty plea admits the facts set forth in the indictment, not the [underlying] facts set forth at the plea hearing." *State v. Riddle*, 2017-Ohio-1199, 88 N.E.3d 475, ¶ 34 (2d Dist.), quoting *State v. Greathouse*, 158 Ohio App.3d 135, 2004-Ohio-3402, 814 N.E.2d 502, ¶ 8 (2d Dist.). "Pleading guilty is 'an admission of every material fact well pleaded in the indictment, dispensing with the necessity of proving them,

and authorizing the court to proceed to judgment.' " *Id.*, quoting *Greathouse* at ¶ 7. When a defendant "has been informed of the charge in the indictment and has had a full opportunity to discuss that charge with his attorney," we have held that "*slight variations* in the description of the offense at the plea hearing" will not support a presumption that the defendant did not understand the nature of the charges against him. (Emphasis added.) *Id.*, citing *Greathouse* at ¶ 8.

**{¶ 30}** Even though the State is not required to articulate the factual basis for a felony guilty plea, we have found that a defendant's guilty plea may be "rendered less than knowing, intelligent, and voluntary" if the State voluntarily undertakes to provide a statement of the underlying facts that is deficient as to some element of the offense, and the defendant's trial attorney advises the defendant to plead guilty despite that deficiency. *See Riddle* at ¶ 39-40. The defendant in *Riddle* was charged with aggravated robbery, but the State's recitation of the underlying facts at the plea hearing "not only failed to establish the 'deadly weapon' element of aggravated robbery, but affirmatively disproved that element as a matter of law." *Id.* at ¶ 39. There we concluded that "[t]he negation of an element of the offense in the prosecutor's statement of facts amounts to more than a 'slight variation' from the description of" the offense in the charging document. *Id.* at ¶ 39. We noted that the charging document (in that case, a bill of information rather than an indictment) "was not read on the record at the plea hearing," and "[a]ll the required elements of [the felony offense being pled to] were never actually established at the plea hearing." *Id.*

**{¶ 31}** The circumstances of Davis's plea are sufficiently similar to those in *Riddle* for us to conclude that Davis was not pleading guilty with "an understanding of the nature

of the charge" (burglary), and that his guilty plea to that charge thus was not knowing, intelligent, and voluntary. Although it could be argued that the State's recitation of the charge[7] at Davis's plea hearing did not affirmatively negate any element of the offense of burglary, neither did that recitation encompass every element necessary to prove that offense. The State's reading of the indictment to set out the facts a defendant is admitting through his guilty plea is sufficient "*if* [the indictment] alleges facts which would constitute the crime charged." (Emphasis added.) *State v. Holloway*, 2d Dist. Montgomery No. 14501, 1995 WL 9444, *1 (Jan. 11, 1995). In Davis's case, the indictment does allege facts sufficient to constitute the crime of burglary, but the State did not read the indictment at the plea hearing. Instead, Davis admitted only to elements ("facts") that were legally insufficient to prove the crime to which he was pleading.

{¶ 32} Although the trial court, after the State's recitation of "facts" but before the court accepted Davis's plea, also endeavored to advise Davis of "[t]he elements of the burglary offense[ ]" to which he was about to plead guilty (Plea Tr., p. 8), the court's statement also omitted a critical statutory element of that offense – i.e., the court failed to specify that burglary under R.C. 2911.12(A)(2) requires proof that the occupied structure into which the defendant trespassed "is a permanent or temporary habitation of any person." Accordingly, while the trial court's statement came closer to advising Davis of and the elements the State would need to prove at trial in order to establish Davis's guilt of the burglary offense, the trial court's admonition also fell short of identifying "every element" the State would have "to prove beyond a reasonable doubt," *see* ¶ 9, above, as

---

[7] The prosecutor characterized his comments as stating "[t]he facts Mr. Davis will be pleading guilty to;" however, it appears the prosecutor actually set forth only a portion of the *elements* constituting a burglary offense, not the underlying "facts."

well as "every material fact" that Davis would be admitting, and thus did not fully correct any false impression that may have been created by the prosecution's recitation. *See Riddle* at ¶ 34, and *Greathouse*, 158 Ohio App.3d 135, 2004-Ohio-3402, 814 N.E.2d 502, at ¶ 17.

{¶ 33} We conclude that the deficient statement of facts placed on the record by the State during the plea proceeding rendered Davis's guilty plea to burglary "less than knowing, intelligent, and voluntary." *See Riddle* at ¶ 39-40. Although the indictment adequately set forth all required elements of the burglary offense, that indictment was not read into the record during the plea hearing, the trial court's recitation also omitted a necessary element, and the facts read by the prosecutor did not constitute the offense of burglary. Accordingly, "[a]ll the required elements of [the felony offense being pled to] were never actually established at the plea hearing." *Id.* at 39. The colloquy does not reflect that Davis was pleading guilty with an "understanding of the nature of the charge."

{¶ 34} As the trial court erred in accepting Davis's guilty plea to the burglary offense, Davis's first assignment of error is sustained as to his burglary conviction.

(iii)    Trial court's alleged failure to inform Davis of the effect of his plea

{¶ 35} Under the heading "Effect of Guilty or No Contest Pleas," Crim.R. 11(B)(1) provides that "[a] plea of guilty is a complete admission of the defendant's guilt." In support of his contention that the trial court erroneously failed to inform him of the effect of his guilty plea in accordance with Crim.R. 11(C)(2)(b) because he was not advised that his plea was a complete admission of guilt, Davis relies on *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51.

{¶ 36} In *Griggs*, the Ohio Supreme Court was confronted with a defendant's

challenge to his guilty plea based on the trial court's failure to inform him in accordance with Crim.R. 11 that such plea was "a complete admission of the defendant's guilt." *Id.* at ¶ 5, 10. The Supreme Court found that "[t]he right to be informed that a guilty plea is a complete admission of guilt is nonconstitutional and therefore is subject to review under a standard of substantial compliance." *Id.* at ¶ 12, citing *Nero*, 56 Ohio St.3d at 107, 564 N.E.2d 474. "Under the substantial compliance standard, we review the totality of the circumstances surrounding [the defendant's] plea and determine whether he subjectively understood that a guilty plea is a complete admission of guilt." *Id.*

**{¶ 37}** In reliance on *Griggs*, we have rejected a defendant's assignment of error based on the trial court's omission of a "complete admission of guilt" admonition, where the defendant "made no assertion at the plea hearing that she was actually innocent of the offense" and nothing in the record suggested that the defendant "was prejudiced by the trial court's failure to provide the notification required by Crim.R. 11(C)(2)(b)." *See State v. Lucero*, 2d Dist. Clark No. 2018-CA-26, 2018-Ohio-4634, ¶ 17.

**{¶ 38}** Reviewing the totality of the circumstances surrounding Davis's plea, we do not find *Lucero* to control the outcome with regard to Davis's burglary conviction. As noted above, it is not apparent on this record what exactly Davis was admitting through his guilty plea to burglary. We previously have opined that a plea may be "less than voluntary, knowing, and intelligent" for purposes of Crim.R. 11(C)(2)(b) "if the trial court says anything that could create confusion concerning the defendant's appellate rights." *State v. Jones*, 2d Dist. Greene No. 2017-CA-27, 2018-Ohio-2219, ¶ 14. Specifically, Jones argued that he was not told that he could not appeal certain pretrial rulings if he pled guilty. *Id.* at ¶ 13. Jones had been informed "that a guilty plea acted as a complete

admission of the conduct to which he was entering a plea," and Jones indicated he understood. *Id.* at ¶ 15.

**{¶ 39}** Although the omission in this case did not implicate Davis's appellate rights, the incomplete and conflicting information about the elements of the burglary offense conveyed during the plea proceeding certainly created confusion about the evidence that would be required to prove the burglary charge to which Davis was pleading guilty. Further, he was not told, nor did he acknowledge, that the plea acted as a complete admission of his conduct or his guilt. Under such circumstances, we are unable to conclude that Davis "subjectively understood" that his guilty plea was a complete admission of all of the elements constituting the indicted burglary offense, *see Griggs* at ¶ 12, or that Davis was not prejudiced by the trial court's omission of the "complete admission" admonition, especially given the incomplete and inconsistent descriptions of the burglary charge. *See Lucero* at ¶ 17. Accordingly, Davis's first assignment of error is sustained for that additional reason as to his burglary conviction.

**{¶ 40}** We reach a different conclusion as to Davis's receiving stolen property conviction. Notably, Davis has identified no defect in the trial court's recitation of the elements of the receiving stolen property offense to which he was entering a guilty plea. Absent any omission by the trial court in that regard, we cannot conclude that Davis was prejudiced as to his receiving stolen property plea by the trial court's failure to recite the "complete admission" language. Davis's argument therefore is not well taken as to that offense.

**{¶ 41}** Because Davis's guilty plea was not knowing, intelligent, and voluntary as to the burglary offense, his conviction and sentence based upon his plea to that offense

must be reversed, and this matter will be remanded to the trial court for further proceedings. However, Davis's receiving stolen property conviction is affirmed.

***Assignment of Error #2 – Error in Imposing Maximum Consecutive Sentences***

{¶ 42} Having determined that Davis's burglary conviction and sentence based upon his invalid guilty plea must be reversed, we need not address Davis's challenge to the consecutive nature of the sentences imposed. We therefore will limit our review of Davis's second assignment of error to his contention that the trial court erred by imposing the maximum sentence for his receiving stolen property offense.

*a. Standard of Review and Applicable Law*

{¶ 43} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds that either (1) the record does not support certain specified findings, or (2) the sentence imposed is contrary to law. *State v. Mayberry*, 2d Dist. Montgomery No. 27530, 2018-Ohio-2220, ¶ 41, quoting R.C. 2953.08(G)(2).

{¶ 44} " 'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 45} Sentences are "contrary to law" when they do not fall within statutory ranges

for offenses or when the trial court fails to consider "the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." *State v. Brown*, 2017-Ohio-8416, 99 N.E.3d 1135, ¶ 74 (2d Dist.), citing *State v. Pawlak*, 8th Dist. Cuyahoga No. 103444, 2016-Ohio-5926, ¶ 58. "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

**{¶ 46}** Under R.C. 2929.11, trial courts are to be guided by the overriding purposes of felony sentencing, which are to "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). As to R.C. 2929.12, subsection (B) lists nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense, and R.C. 2929.12(C) outlines four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each list five factors to consider in deciding if an offender is likely to commit future crimes. Under R.C. 2929.12(F), an offender's military service, if any, is considered.

**{¶ 47}** For purposes of sentencing, a court "is not confined to [considering] the

evidence that strictly relates to the conviction offense because the court is no longer concerned * * * with the narrow issue of guilt." *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 14 (2d Dist.). Sentencing courts may consider "hearsay evidence, facts related to charges that were dismissed pursuant to a plea bargain, and allegations contained in a PSI report." *State v. Bautista*, 2d Dist. Clark No. 2015-CA-74, 2016-Ohio-5436, ¶ 12, citing *State v. Clemons*, 2d Dist. Montgomery No. 26038, 2014-Ohio-4248, ¶ 8.

*b. Davis's Sentence for Receiving Stolen Property*

{¶ 48} Here, the 12-month prison term the trial ordered for Davis's receiving stolen property offense was the maximum sentence permitted for a fifth-degree felony. *See* R.C. 2929.14(A)(5). In imposing that sentence, the court observed that Davis previously had served three prison terms; had nine prior theft-related convictions, including a prior burglary conviction; and was on post-release control at the time of the 2017 offense. The record also reflects that Davis's PSI showed that he "got kicked out of residential treatment" for substance abuse and quickly began to re-offend each time he was released from prison. Consistent with R.C. 2929.11(A), the court specifically mentioned the need to punish Davis and to protect the public from future crime by him.

{¶ 49} Davis argues that his total sentence was disproportionate to his co-defendant's 30-month sentence, and that his (Davis's) conduct in committing the two offenses of which he was convicted was a "less serious form" of those crimes in accordance with R.C. 2929.12(C). Our reversal of Davis's burglary sentence leaves the record devoid of any basis for his disproportionality argument. Further, Davis has identified no particular facts on the record that would support an inference that his receipt

of stolen property somehow amounted to a less serious form of that offense. Given that the stolen check involved in Davis's offense was taken during a burglary close in both time and geographic proximity to the burglary for which Davis actually was charged, the record arguably would support an inference that Davis's receiving stolen property offense involved a more serious form of conduct. *See Bowser* at ¶ 14; *Bautista* at ¶ 12.

{¶ 50} Our review of the record indicates that the trial court gave proper consideration to the criteria set forth in R.C. 2929.11, 2929.12, and 2929.13. Davis's sentence for receiving stolen property was within the statutory sentencing range, the record does not clearly and convincingly fail to support the court's decision to impose the maximum sentence, and the sentence was not contrary to law. Accordingly, Davis's challenge to the trial court's imposition of the maximum sentence for his receiving stolen property conviction is not well taken, and his second assignment of error is overruled.

### *Conclusion*

{¶ 51} The trial court's judgment will be affirmed as to Davis's conviction and sentence for receiving stolen property and reversed as to Davis's conviction and sentence for burglary, and this matter will be remanded to the trial court for further proceedings.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

WELBAUM, P.J., concurs in part and dissents in part:

{¶ 52} I agree with the majority's decision to affirm Davis's conviction and sentence for receiving stolen property, but I disagree with the majority's decision to reverse Davis's conviction and sentence for burglary. Unlike the majority, I believe the trial court substantially complied with Crim.R. 11 and did not abuse its discretion when it found that

Davis understood the nature of the burglary charge to which he pled guilty. Therefore, for the reasons outlined below, I would hold that Davis's guilty plea to burglary was knowingly, intelligently, and voluntarily entered.

{¶ 53} The majority relies on *Riddle*, 2017-Ohio-1199, 88 N.E.3d 475 in concluding the record does not support a knowing, intelligent, and voluntary guilty plea. *Riddle*, however, is distinguishable from the facts of this case. In *Riddle*, the prosecutor's recitation of the facts at the plea hearing absolutely negated an element of the indictment. *Id.* at ¶ 39-42. Here, the recitation of facts concerning Davis's burglary offense *omitted* one or more elements, but did not *contradict or negate* any of the elements necessary to support his conviction for that offense. Our decision in *Riddle*, therefore, is not analogous to the case at bar.

{¶ 54} In *State v. Cohen*, 60 Ohio App.2d 182, 396 N.E.2d 235 (1st Dist.1978), the First District Court of Appeals highlighted the distinction between omitting and negating an element of an offense. In that case, the defendant was charged with robbery under R.C. 2911.02(A), which included the element of "us[ing] or threaten[ing] the immediate use of force against another." *Id.* at 182-183. However, when reciting the facts at the plea hearing, the prosecutor stated that the victim was sleeping throughout the entire offense. *Id.* at 183. The trial court found that "[t]he mere rearrangement of a sleeping victim's unresisting body to facilitate the commission of a theft offense does not, in our opinion, constitute any 'violence, compulsion or constraint * * * exerted * * * against a person' as those terms are used to define 'force' in R.C. 2901.01(A)." *Id.* Therefore, the First District found that the prosecutor's statement "negative[d] the existence of an essential element of the offense of robbery." *Id.*

**{¶ 55}** The court in *Cohen* further stated that:

> This court has held on several occasions, that as a consequence of Crim.R. 11(B)(2), a defendant's conviction of the offense charged in the indictment is proper where the prosecutor, through inadvertence or otherwise, [o]mits the factual fundament for an essential element of the offense from his oral description of the events and circumstances surrounding the charge, or where such recital is controverted by the appellant's own version of the facts.
>
> Those cases, however, must be distinguished from the situation presented to us in the instant case, *wherein the uncontroverted statement of facts recited to the court below not only failed to include, but [a]bsolutely negatived the existence of, an essential element of the offense charged in the indictment.*

(Emphasis added and internal citations omitted.) *Id.* at 184.

**{¶ 56}** In *Greathouse*, 158 Ohio App.3d 135, 814 N.E.2d 502, 2004-Ohio-3402, this court rejected the suggestion that when "a defendant has been informed of the charge in the indictment and has had a full opportunity to discuss that charge with his attorney, slight variations in the description of the offense at the plea hearing will create a presumption that the defendant did not understand the nature of the charges against him." *Id.* at ¶ 8. Therefore, although the prosecutor in *Greathouse* recited a factual narrative at the plea hearing that did not expressly mention an element of the offense being pled to, we nevertheless found the prosecutor's narrative sufficient to embrace the essential elements of the offense. *Id.* at ¶ 11, 26.

{¶ 57} The problem in *Greathouse,* however*,* arose during the trial court's plea colloquy. During the plea colloquy, the trial court asked the defendant if he understood "the facts that the prosecutor just read into the record" and if "those are the facts to which you wish to enter a plea of guilty?" *Id.* at ¶ 14-17. The defendant answered "yes" to both questions. The defendant then told the trial court that he was pleading guilty to grand theft auto because "the car got stolen from [him]" and that he was "wrong for not coming right back[.]" *Id.* at ¶ 18-21.

{¶ 58} In *Greathouse*, this court found that the defendant's "responses were a red flag to the trial court that further inquiry was necessary to ensure that [the defendant] understood the purpose-to-deprive elements of the offense and that he was admitting these elements of the offense." *Id.* at ¶ 28. More specifically, we determined that the record indicated there was as reasonable possibility that the defendant believed he was guilty merely for failing to timely return the car, and thus did not understand the nature of his offense. *Id.* at ¶ 26. Indeed, the defendant's comment that the car was stolen from him effectively negated the purpose-to-deprive element of grand theft auto. We therefore reversed the judgment of the trial court. *Id.* at ¶ 29-31.

{¶ 59} The present case is similar to *Greathouse* in that the trial court asked the defendant whether he was pleading guilty to the facts read by the prosecutor as opposed to the facts in the indictment. It is well established that, "[a] guilty plea admits the facts set forth in the indictment, not the facts set forth at the plea hearing." (Citation omitted.) *Id.* at ¶ 8. In my opinion, had the trial court simply asked Davis whether he was pleading guilty to the facts as alleged in the indictment, there would be no issue with regard to whether Davis understood the nature of the burglary offense. However, that is not what

happened here.

{¶ 60} Nevertheless, the fact remains that, unlike the defendant in *Greathouse*, Davis did not make a statement during the plea proceedings that indicated he did not understand the nature of the burglary charge to which he pled guilty. As previously noted, the defendant in *Greathouse* made a statement about his understanding of the grand theft auto offense that negated an element of the offense. No such statement was made by Davis with regard to his burglary offense here.

{¶ 61} In addition, unlike *Greathouse*, there is nothing in the record indicating that Davis did not understand the nature of the burglary offense to which he pled guilty. Although the prosecutor's statement at the plea hearing omitted multiple elements of burglary, the trial court partially cured the error by reciting all but one element, i.e., that the occupied structure to which Davis trespassed was a "permanent or temporary habitation of any person." Contrary to the majority in this case, I believe the inadvertent omission of that element does not establish that Davis did not understand the nature of the burglary charge.

{¶ 62} The court in *State v. Campanaro*, 4th Dist. Highland No. 97CA942, 1998 WL 961067 (Nov. 10, 1998), reached a similar conclusion. In *Campanaro*, the prosecutor failed to state the trespass element of the defendant's burglary charge when reciting the facts at the defendant's plea hearing. *Id.* at *3. In affirming the validity of the defendant's guilty plea, the trial court relied, in part, on *Cohen*, 60 Ohio App.2d 182, 396 N.E.2d 235. Specifically, the court in *Campanaro* found that the facts recited by the prosecutor did not negate the existence of the trespass element. *Id.* In so holding, the court in *Campanaro* stated that:

In the instant case, the facts recited to the court failed to establish the trespass element of the offense of burglary. They did not, however, "absolutely negative[ ] the existence of" that element. That is, although the state's recitation of facts affirmatively placed defendants Kaczmarek and Little in the burglarized residence and not appellant, the state's recitation of facts did not "absolutely negative" appellant's presence therein. Accordingly, *Cohen* does not support appellant's assertion that the trial court erred in accepting his plea. In fact, *Cohen* supports the conclusion that the trial court's acceptance of appellant's plea was proper. We have concluded herein that the prosecutor's oral description omits (but does not absolutely negative) the element of trespass. Under *Cohen*, "a defendant's conviction of the offense charged in the indictment is proper where the prosecutor, through inadvertence or otherwise, omits the factual fundament for an essential element of the offense from his oral description of the events and circumstances surrounding the charge." Accordingly, the trial court's acceptance of appellant's plea was proper under *Cohen*.

*Campanaro* at *3.

{¶ 63} The *Campanaro* court also partially relied on the fact that the defendant made no claim indicating that he was unaware of, or that he misunderstood, the specific allegations contained in the indictment. The court explained that:

"[W]here a defendant pleads guilty, with no claim of factual innocence, neither Crim.R. 11 nor the Constitutions of Ohio or the United States require the court to determine if there is a factual basis for the plea."

[*State v. McDowell*, 6th Dist. Erie No. E-92-78, 1993 WL 381576 (Sept. 30, 1993), citing *State v. Ricks*, 48 Ohio App.2d 128, 131, 356 N.E.2d 312 (8th Dist.1976)] * * *.   Appellant made no claim of factual innocence at the time he entered his plea.   Accordingly, the trial court was not required to determine if there was a factual basis for his plea.   So long as the facts alleged in the indictment, information or complaint were sufficient to justify conviction of the offense charged, and the state's recitation of facts did not absolutely negative an element of the offense, *Cohen*, the trial court could properly accept appellant's plea of guilty and convict him thereon.   The indictment herein alleged that appellant "did by force, stealth or deception, trespass in an occupied structure or in a separately secured or separately occupied portion thereof, towit [sic]: the residence of Howard Miles, with purpose to commit therein a theft offense or any felony * * *."   These allegations are sufficient to justify appellant's conviction for the crime of burglary.

*Campanaro* at *4.   *See also, State v. Elliott*, 5th Dist. Licking No. 2006-CA-00155, 2007-Ohio-4503 (distinguishing *Greathouse* and finding a voluntary plea of no contest where the prosecutor omitted the venue element from the recitation of facts of 58 felony counts, but did not otherwise negate any element of the charges).

{¶ 64} In this case, there is no dispute that the indictment charging Davis properly set forth the elements of burglary.   The plea form stated that Davis was entering a plea of guilty to Count 2, burglary in violation of R.C. 2911.12(A)(2), a second degree felony. It further stated that Davis "underst[ood] the nature of these charges and the possible

defenses," and that "[b]y pleading guilty [he] admit[s] committing the offense and will tell the Court the facts and circumstances of [his] guilt." Plea Agreement (Nov. 13, 2017), Clark C.P. No. 2017-CR-0542(A), p. 1-3. At the plea hearing, Davis told the trial court that he signed the plea agreement, had an opportunity to review it with his attorney, and understood it. Plea Hearing Tr. p. 6.

{¶ 65} Like the defendant in *Campanaro*, Davis did not claim to be innocent, coerced, or confused during the plea proceedings. Davis also did not make any statement indicating that he did not understand the nature of the burglary offense at issue. In fact, Davis's plea form and statements to the trial court reflect that he did understand the nature of the offense. Although the prosecutor and trial court omitted certain elements of burglary, none of their statements negated an element of that offense. In any event, Davis was entering a plea of guilty to the facts set forth in the indictment, not the prosecutor's and trial court's misstatements.

{¶ 66} With regard to the element of burglary that requires "any person other than an accomplice of the offender [to be] present or likely to be present" in the occupied structure trespassed upon, the majority found it significant that the police report attached to the PSI indicated that the residents of the burglarized address were not at home when Davis and his accomplice entered the residence. However, that has no bearing on whether the plea is valid since a guilty plea is a complete admission of every material fact in the indictment and thus relieves the state from having to prove those facts. *Greathouse*, 158 Ohio App.3d 135, 2004-Ohio-3402, at ¶ 8. Moreover, the police report indicated that the residents arrived as Davis and his accomplice were "in their driveway coming out of their house" while "carrying bags" with stolen property. It is arguable that

this would have been adequate evidence that the residents were "present or likely to be present" during the course of the burglary. *See State v. Kilby*, 50 Ohio St.2d 21, 23, 361 N.E.2d 1336 (1977). Regardless, such evidence certainly does not negate the "present or likely to be present" element of burglary.

{¶ 67} Finally, we have repeatedly stated that substantial compliance with Crim.R. 11(C) is sufficient when waiving non-constitutional rights. We have also stated that:

> "[W]hen non-constitutional rights are at issue, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made generally must show a prejudicial effect." * * * "Prejudice in this context means that the plea would otherwise not have been entered."

(Internal citations omitted.) *State v. Johnson,* 2d Dist. Montgomery No. 27372, 2017-Ohio-9227, ¶ 8.

{¶ 68} In light of the circumstances of this case, I do not agree that Davis was prejudiced by the misstatements of omission at the plea hearing. Davis received the substantial benefit of a written plea agreement, which Davis told the trial court he understood, signed, and had an opportunity to review with his attorney. Plea Hearing Tr. p. 4-6. There were no defects in the burglary charge set forth in the indictment. Davis did not claim to be innocent, coerced, or confused. The misstatements of omission made by the prosecutor and the trial court were not uncontested facts that absolutely negated or disproved one or more elements of the indictment. Therefore, in my view, the majority's opinion improperly expands the case law of this district and other Ohio districts by equating omissions in a recitation of facts to uncontroverted, absolute facts that negate

one or more elements of the indicted offense.

**{¶ 69}** For the foregoing reasons, I believe Davis's conviction for burglary should be affirmed. Therefore, I respectfully dissent from the portion of the majority's opinion stating otherwise, and concur with the remainder of the majority's opinion.

Copies sent to:

Andrew P. Pickering
John Lintz
Johnna M. Shia
Hon. Douglas M. Rastatter